## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VALERIE REEVES,                          :
                                         :
        Plaintiff,                   :
                                         :
    v.                                   :        C.A. No. 05-7 JJF
                                         :
RADIOLOGY ASSOCIATES, INC.,              :        JURY TRIAL DEMANDED
                                         :
        Defendant.                   :

## APPENDIX TO
## OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
## DISMISS/SUMMARY JUDGMENT

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
**RICHARD R. WIER, JR., P.A.**
1220 Market St., Suite 600
Wilmington, DE 19801
(302)888-3222
RWier@wierlaw.com

November 1, 2005

## TABLE OF CONTENTS

Charge of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit A

Charge withdrawal request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit B

Right to Sue (July 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit C

Right to Sue (November 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit D

Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit E

Affidavit of Donna Grace  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit F

    2004 Employer Information Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 1

    Final Written Warning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 2

    Resignation letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 3

Affidavit of Andrea Baxter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit G

Digest of Layer Discipline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit H

Unreported cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit I

EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

**ENTER CHARGE NUMBER**

☐ FEPA
☐ EEOC

**Delaware Department of Labor** and **EEOC**
(State, or local Agency, if any)

**NAME** (Indicate Mr., Mrs., Ms)
Valerie Reeves

**HOME TELEPHONE NO.** (Include Area Code)
(302) 834-0312

**STREET ADDRESS**                    **CITY, STATE AND ZIP CODE**
8 Delft Court  Middletown DE 19709  NCC

**COUNTY**

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** (If more than one, list below.)

**NAME**
Radiology Associates

**NO. OF EMPLOYEES OR MEMBERS** 200+

**TELEPHONE NUMBER** (Incl. Area Code)
(302) 652-3016

**STREET ADDRESS**                    **CITY, STATE AND ZIP CODE**
1701 Augustine Cut-Off, Suite 100 Wilmington DE 19803

**NAME**

**TELEPHONE NUMBER** (Include Area Code)

**STREET ADDRESS**                    **CITY, STATE AND ZIP CODE**

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE

☐ RETALIATION ☐ DISABILITY ☐ OTHER (Specify)

**DATE DISCRIMINATION TOOK PLACE**
**EARLIEST** 2/18/2003
**LATEST** 2/18/2003
☐ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional space is needed, attached extra sheet(s):

I am a black individual who began working for Respondent on November 25, 1974. Because on February 18, 2003 the City of Wilmington declared a state of emergency, my work site was closed. Andrea Baxter (white) advised me to report to another office outside of Wilmington, which I did.

Andrea gave no explanation for my one-day transfer to another office.

I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Delaware Discrimination in Employment Act, as amended, because of my race (black): 1. I am one of four black x-ray technicians working for Respondent. 2. I was the only employee to be transferred on February 18. 3. Respondent is punitively using the transfer in retaliaiton for unscheduled, unpaid time I previously took.

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

**SIGNATURE OF COMPLAINANT**

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

**Date** 4/21/03

*Valerie Reeves*
**Charging Party (Signature)**

**NOTARY -** (When necessary to meet State and Local Requirements)

Subscribed and sworn to before me this date                    (Day, month, and year)

EEOC FORM 5
REV 6/92                    PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

# EXHIBIT B

DEPT. OF LABOR

## REQUEST FOR WITHDRAWAL OF CHARGE OF DISCRIMINATION

FEB 2 7 2004

INDUSTRIAL AFFAIRS
OFFICE OF LABOR
LAW ENFORCEMENT

Please note that your charge is presently open with both the Delaware Department of Labor (DDOL) and the Equal Employment Opportunity Commission (EEOC).  If you desire to withdraw your charge it will be necessary to indicate in the space provided below.  Since a request for withdrawal is subject to approval of the agencies named above, your request will be considered and acted upon when received.

DDOL Charge No:    03041028                    EEOC Charge No:   17CA300376

Charging Party Name:    Valerie Reeves

Respondent's Name:    Radiology Associates

## CHARGING PARTY COMPLETE INFORMATION BELOW (CONTINUE ON REVERSE SIDE IF NECESSARY):

I am aware that the Delaware Department of Labor and the Equal Employment Opportunity Commission protect my right to file a complaint.  I have not been forced to request this withdrawal.

_____ (Check if appropriate):  Also, I have been advised that it is unlawful for any person covered by the enabling legislation of the EEOC or the DDOL to threaten, intimidate or harass me because I have filed a complaint.

I request the withdrawal of my complaint because:

*length of time To process complaint unsatisfactory and decision not To accept no fault result negates reason for complaint*

I wish to withdraw my charge filed with the Delaware Department of Labor.

*Valerie Reeves*
Signature                                                   2·27·04
                                                              Date

I wish to withdraw my charge filed with the Equal Employment Opportunity Commission.

*Valerie Reeves*
Signature                                                   2·27·04
                                                              Date

RECEIVED
MON FEB 27 P 38
OFFICE OF WORKERS COMPENSATION
STATE OF DELAWARE

# EXHIBIT C

.m 161-B (10/96)                **U.S. E\      AL EMPLOYMENT OPPORTUNITY COMM.      .ON**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Valerie Reeves                                   From: U. S. Equal Employment Opportunity Commission
    8 Delft Court                                               Philadelphia District Office
    Middletown, DE 19709                                 21 South 5th Street - Suite 400
                                            Philadelphia, PA 19106-2515

[    ]      *On behalf of person(s) aggrieved whose identity is*
          *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2003-00376 (formerly 17CA300376) | Legal Unit | 215-440-2828 |

## NOTICE TO THE PERSON AGGRIEVED:

*(See also the additional information attached to this form.)*

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]      More than 180 days have passed since the filing of this charge.

[    ]      Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC
        will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]      The EEOC is terminating its processing of this charge.

[    ]      The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[    ]      The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court
        <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge
        will be lost.

[    ]      The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of
        your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____                                    _____
      Marie M. Tomasso, District Director                                    *(Date Mailed)*  July 20, 2004

Enclosure(s)

cc:    Radiology Associates
      Darryl K. Fountain, Esquire (for Charging Party)

# EXHIBIT D

EEOC Form 161 (3/98)

U.S. ~~~UAL~~ EMPLOYMENT OPPORTUNITY COM~~~~SION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  Valerie Reeves<br>8 Delft Court<br>Middletown, DE 19709 | From:  Philadelphia District Office<br>21 South 5th Street<br>Suite 400<br>Philadelphia, PA 19106 |

| [ ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR § 1601.7(a)) |

| EEOC Charge No. | EEOC Representative | | Telephone No. |
|---|---|---|---|
| 17C-2003-00376 | State & Local Unit | | (215) 440-2600 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Marie M. Tomasso*

**November 1, 2004**

Enclosure(s)

**Marie M. Tomasso,**<br>**Director**

(Date Mailed)

cc:  RADIOLOGY ASSOCIATES<br>Attn:  HUM. RES. OFFICER<br>1701 AUGUSTINE CUT-OFF<br>SUITE 100<br>WILMINGTON, DE   19803

DARRYL FOUNTAIN, ESQ.<br>715 N. KING ST.<br>WILMINGTON, DE   19801

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

VALERIE REEVES

      Plaintiff.

      v.

RADIOLOGYASSOCIATES, INC.,

      Defendant.

C.A. NO.

**JURY TRIAL DEMANDED**

## COMPLAINT

### JURISDICTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for employment discrimination. Jurisdiction exists by virtue of 42 U.S.C. § 2000e-5. Equitable and other relief are also sought under 42 U.S.C. § 2000e-(g).

### PARTIES

2. Plaintiff resides at Eight Delft Court , Middletown, DE 19709. Plaintiff is an African American female.

3. Defendant is a Delaware corporation with corporate headquarters at 1701 Augustine Cut-Off , Wilmington, DE 19803.

4. Defendant corporation encompasses 13 satellite offices within the state and a staff surpassing 200.

5. The discriminatory conduct occurred in connection with the plaintiff's employment at the defendant's Wilmington satellite facility located at 1508 Penn Ave., Suite 1B, Wilmington, De 19806.

## CONDITIONS PRECEDENT

6. The alleged discriminatory acts occurred from 1974-2004.

7. The plaintiff retired in January of 2004 hence, the alleged discriminatory practices have been discontinued.

8. The plaintiff filed charges on March 28, 2003 with the Delaware Department of Labor, Office of Labor Law Enforcement, at 4425 North Market Street, Wilmington, DE 19802, regarding the defendant's alleged discriminatory conduct from 1974-2004.

9. The plaintiff filed charges with the Equal Employment Opportunity Commission of the United States regarding the defendant's alleged discriminatory conduct on March 28, 2003.

10. The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter which was received by the plaintiff on July 20, 2004.

11. The alleged discriminatory acts in this suit concern a failure to promote and the otherwise disparate treatment of the plaintiff because of her race.

12. A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of the plaintiff's claim. (attached hereto as Exhibit A).

13. If relief is not granted, the plaintiff will be irreparably denied rights secured by Title VII of the 1964 Civil Rights Act, as amended.

## FACTS

14. The defendant has engaged in a pattern and practice of acts which discriminated against the plaintiff in employment opportunities because of her race.

15. The plaintiff began her employment with the defendant on November 25, 1974.

16. The plaintiff was continually employed by the defendant for 29 years in the same capacity.

17. In 2004, the defendant's staff of over 200 employees comprised only four African Americans.

18. The plaintiff was never promoted to a supervisory role during her years of service though she successfully operated a one-person satellite office for over 15 years.

19. As a result of assisting her mother proceeding a triple bypass surgery [forwarded documentation to defendant substantiating such], the plaintiff received the only reprimand during her service in January of 2003 [exhausted her allocated paid time off].

20. The plaintiff was given a written reprimand for the same occurrence on February 5, 2003.

21. A memorandum sent to Jim Santoro [Administrator] and Susan Levin [Human Resources] regarding the excessive nature of the written reprimand was not answered.

22. Following the declaration of a state of emergency in Wilmington, DE on February 18, 2003 [due to blizzard conditions], the plaintiff was the only technician told to report to another office on that day [reported to Glascow office which was staffed with six associates and told to file from 11:30 a.m. - 5 p.m.].

23. At the culmination of her 29 years of service the plaintiff's salary was $40,000.

## FIRST FEDERAL CLAIM FOR RELIEF
### Employment Discrimination

24. The plaintiff incorporates and realleges paragraphs 1 - 23 as if fully written herein. At all times during her employment , the plaintiff performed all assigned duties in a professional manner with competence and faithfully followed all reasonable instructions and regulations of

the defendant.

25. The plaintiff was subject to adverse employment action. The reason for the plaintiff's adverse employment action was primarily related to her race.

26. The above pattern of discriminatory employment practices including discrimination in hiring, job assignment, promotion, and compensation violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e.

27. As a direct and proximate result of said acts, the plaintiff suffered loss of employment opportunity, loss of income, loss of other promotional benefits, and has suffered distress, humiliation, and embarrassment.

## SECOND FEDERAL CLAIM FOR RELIEF
### Retaliatory Reassignment

28. Plaintiff incorporates and realleges paragraphs 1 - 27 as if fully written herein.

29. The above discriminatory and retaliatory pattern and practice by the defendant encompassed assigning the plaintiff to a single person facility and compelling the plaintiff to report to another office during a state of emergency when no one else was compelled to do the same. This conduct violates the Thirteenth Amendment to the Constitution as protected by 42 U.S.C. § 1981.

30. As a direct and proximate result of said acts, the plaintiff suffered loss of employment opportunity, loss of income, loss of other promotional benefits, and has suffered distress, humiliation, and embarrassment.

## STATE CLAIM FOR RELIEF
### Employment Discrimination

31. Plaintiff incorporates and realleges paragraphs 1 - 30 as if fully written herein.

32. The defendants intentionally isolated the plaintiff in a one person facility hence,

depriving of her of the opportunity to supervise other associates.

33. Isolating the plaintiff in this fashion violates 19 Del. C. § 711, which expressly prohibits limiting or segregating employees in any way which would deprive or tend to deprive any individual of employment opportunities based on race.

34. As a direct and proximate result of said acts, the plaintiff suffered loss of employment opportunity, loss of income, loss of other promotional benefits, and has suffered distress, humiliation, and embarrassment.

WHEREFORE, the plaintiff pray this Honorable Court to award her judgement against the defendants, additional general and compensatory damages, nominal damages, punitive damages, the cost of this action, attorney's fees, and any other relief deemed appropriate by the Court.

Respectfully submitted,

Darryl K. Fountain
715 N. King Street
Wilmington, DE 19801
(302) 655-9805
**Attorney for the plaintiff**

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VALERIE REEVES,                    :
                                  :
      Plaintiff,              :
                                  :
      v.                     :        C.A. No. 05-7 JJF
                                  :
RADIOLOGY ASSOCIATES, INC.,        :        JURY TRIAL DEMANDED
                                  :
      Defendant.             :

## AFFIDAVIT OF DONNA GRACE

County of New Castle        :
                           :        ss
State of Delaware          :

I, Donna Grace, being duly sworn, do depose and say that:

1.  I am the Operations Manager for Papastavros' Associates, which also does business as Radiology Associates, Inc.  I have been employed with the company for 25 years.

2.  Papastavros' Medical Imaging, L.L.C. (also known as is Radiology Associates, Inc.) is a medical practice with offices throughout the State of Delaware.  There are two satellite offices in the City of Wilmington.  One on Broom Street, and one on Pennsylvania Avenue.  Valerie Reeves was assigned to the Pennsylvania Avenue office.  Each of these Wilmington offices had one employee assigned to it.

3.  On Monday, February 17, 2003, due to blizzard conditions, the City of Wilmington issued a state of emergency.  On Tuesday, February 18, 2003, all of Defendant's offices were open, except for the two that were within the city limits of Wilmington.  The two in the City of Wilmington were closed as the state of emergency remained in effect.   The employee for the Broom Street office could not staff the that office since she could not drive due to the emergency.

That employee had previously requested the day off well in advance of the storm.

4. Ms. Reeves, who was assigned to the Pennsylvania office, lived outside the City of Wilmington; however, her office at Pennsylvania Avenue was closed due to the emergency. Since she could still drive to and another office - not being a resident in the City of Wilmington - she needed to be assigned to work at another office outside the City.

5. Ms. Andrea Baxter, who was the Chief Technologist and supervisor of Ms. Reeves, attempted to contact Ms. Reeves, the morning of February 18, 2003. Ms. Reeves returned Ms. Baxter's message and indicated that she was in Sussex County. Ms. Baxter advised her that her site would be closed due to the state of emergency and gave her a choice as to where to report, either to the Augustine Cut-Off location, which was just outside the city limits, Polly Drummond Hill Road, or to the Glasgow site, which was closer to Ms. Reeves' home in Middletown, Delaware. Ms. Reeves choose the Glasgow location and reported late to that location. Ms. Reeves was not compelled by threat to work and was paid for her work. Ms. Reeves was not assigned to the location because of her race, but solely because her assigned office was closed.

6. Radiology Associates, Inc. is an equal opportunity employer. It's 2004 Employer Information Report identified that in 2003, we had 222 total employees, of which 182 were female, 24 were African American, 2 Hispanic, 2 Asian and 1 American Indian. [Attachment 1].

7. Ms. Reeves was never discriminated against based on her race.

8. All promotional opportunities within the company are posted. Although other employees in the satellite offices posted for promotional opportunities, Ms. Reeves never applied for any promotional opportunities or requested a different job assignment. While she was employed, Ms. Reeves made no claim that Radiology Associates, Inc. failed to promote her because of her race.

9. Ms. Reeves' salary was comparable to other similarly situated employees. While she was employed, Ms. Reeves made no claim that Radiology Associates, Inc. provided similarly situated employees greater salary.

10. During her employment with Radiology Associates, Inc., Ms. Reeves received warnings regarding excessive use of Paid Time Off. On February 5, 2003, Ms. Reeves was issued a Final Written Warning. [Attachment 2].

11. On January 23, 2004, Ms. Reeves retied from employment with Radiology Associates, Inc. In her December 12, 2003 retirement letter, she did not raise any allegations of discrimination. [Attachment 3].

*Donna M. Grace*

SWORN TO AND SUBSCRIBED before me this 1st day of ~~October~~ November 2005.

DANIEL W. SCIALPI
ATTORNEY AT LAW
Notarial Officer, State of Delaware
Pursuant to 29 Del. C. §4323 (a)(3)

ATTACHMENT 1

CO=1.302432
U=1.302412

**EQUAL EMPLOYMENT OPPORTUNITY**
**2004 EMPLOYER INFORMATION REPORT**
**CONSOLIDATED REPORT - TYPE 2**

**SECTION B - COMPANY IDENTIFICATION**

1. RADIOLOGY ASSOCIATES INC
1701 AUGUSTINE CUT OFF
SUITE 202
WILMINGTON, DE 19803

2.a. RADIOLOGY ASSOCIATES INC
1701 AUGUSTINE CUT OFF
SUITE 202
WILMINGTON, DE 19803

c. Y

**SECTION C - TEST FOR FILING REQ.**
1-Y 2-N 3-Y DUNS NO.:84391368
**SECTION E - ESTABLISHMENT INFO.**
NAICS:

**SECTION D - EMPLOYMENT DATA**

| JOB CATEGORIES | OVERALL TOTALS | NUMBER OF EMPLOYEES | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | MALE | | | | | FEMALE | | | | |
| | | WHITE (NOT OF HISPANIC ORIGIN) | BLACK (NOT OF HISPANIC ORIGIN) | HISPANIC | ASIAN OR PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKAN NATIVE | WHITE (NOT OF HISPANIC ORIGIN) | BLACK (NOT OF HISPANIC ORIGIN) | HISPANIC | ASIAN OR PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKAN NATIVE |
| Officials and Managers | 14 | 4 | 0 | 0 | 1 | 0 | 9 | 0 | 0 | 0 | 0 |
| Professionals | 3 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Technicians | 114 | 4 | 0 | 0 | 1 | 0 | 100 | 7 | 1 | 1 | 0 |
| Sales Workers | 88 | 0 | 0 | 0 | 0 | 0 | 75 | 11 | 1 | 1 | 0 |
| Office and Clerical | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Craft Workers (Skilled) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Operatives (Semi-Skilled) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Laborers (Unskilled) | 7 | 5 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 |
| Service Workers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 226 | 16 | 0 | 0 | 2 | 0 | 185 | 19 | 2 | 2 | 0 |
| Total employment reported in previous EEO-1 report | 222 | 14 | 0 | 0 | 2 | 0 | 182 | 19 | 2 | 2 | 1 |

**SECTION F - REMARKS:**

556 South Dupont Blvd., Milford, DE - Closed - October 2003 314 East Main Street, Newark, DE - Closed - February 2004 1508 Pennsylvania Ave., Wilmington, DE - Open. However, 1 employee from 1701 Augustine Cut-Off rotates at this site.

ATTACHMENT 2



# PAPASTAVROS' ASSOCIATES
## M E D I C A L    I M A G I N G    L.L.C.

1701 Augustine Cut-Off, Suite 100, Professional Building IV, Wilmington, DE 19803  TEL. (302) 652-3016  FAX (302) 652-2534
40 Polly Drummond Hill Road, Newark, DE 19711  TEL.(302) 737-5990  FAX (302) 738-9176
2600 Glasgow Avenue, Glasgow, DE 19702  TEL. (302) 832-5590 FAX (302) 832-9971
1539 Savannah Road, Lewes, DE  19958  TEL. (302) 644-2590 FAX (302) 644-2591

Garth A. Koniver, MD F.A.C.R.
Thomas W. Fiss, MD F.A.C.R
Majid Mansoory, MD

Diagnostic Roentgenology
Computerized Tomography
Magnetic Resonance Imaging
Nuclear Medicine including cardiac
Ultrasound including cardiac
Mammography/Core Biopsy
Non-Invasive Vascular Laboratory

Stephen J. Lawless, MD
James A. Murphy, MD
John D. McAllister, II MD
Anthony J. Scola, MD
Indukumar Solanki, MD
Steven A. Ebner, MD
Michael Leviton, MD
Satyajit Sarangi, MD

Date:        February 5, 2003

TO:          Valerie Reeves

FROM:        Andrea Baxter, Chief Technologist

### Final Written Warning

On January 15, 2002 you were given a Formal Written Warning regarding the use of Paid Time Off (PTO) that you have not earned. You were given the written warning due to incidents of use of unearned PTO, and at that time was informed that any further incidents would result in a further disciplinary action. As stated in our Employee Handbook, May 2002, page 25, "Disciplinary action may include, but is not limited to, suspension, verbal warning, written warning, final warning and/or discharge."

In addition, this was reflected in your Performance Appraisal on January 2, 2003, where you received a rating of "provisional" for dependability that is defined in the performance appraisal sheet as "conforms to policies regarding scheduled and unscheduled time off."

Our Employee Handbook, May 2002, page 10, states, "Full-time and part-time, regular employees are eligible for paid time off. The employee is responsible for accurately managing his/her paid time off bank."

You were given a printout of your 2002 PTO on October 3, 2002. Even with this information, you were absent from work on 12/11/02 (3.25 hours), 12/12/02 (8 hours), and 12/19/02 (2.5 hours) with use of unearned PTO. As the practice does not recognize "unscheduled PTO," you are in non-compliance with our policies.

You are expected to be at work every day you are scheduled to work. We have discussed that you are to contact either Donna Grace or me if you need to leave the office unattended at any time. Additionally, if necessary, you also may contact Human Resources or the Administrator, Jim Santoro, if neither of us is available.

I want you to know that this is a serious infraction of our policy. If you are having difficulties managing or tracking of your PTO in spite of receiving printouts of your PTO accruals and usage from Donna Grace on a regular basis, you must let me know immediately.

You must understand that this is your final written warning and it will become a part of your personnel file. Any further incidents will result in the immediate termination of your employment.

A copy of this memo documenting this warning will be placed in your file.

Received by: _Valerie Reeves_____        Date: _2.5.03_____

1508 Pennsylvania Avenue, Wilmington
1320 Philadelphia Pike, Claymont
314 E. Main Street, Newark

2700 Silverside Road, Brandywine
6 Omega Drive Bldg. B-89, Christiana
556 S. Dupont Highway, Milford
114 St. Ann's Church Road, Middletown

1805 Foulk Road, Brandywine
1100 S. Broom Street, Wilmington
3505 Silverside Road, Fairfax

## PTO 2002

**Name:** **Reeves, Valerie**    Printed: 1/30/2002;5/20/02,10/03/02

| Date | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | 8.00 | - | - | - |
| | - | - | - | - | - | - | - | - | 8.00 | - | - | - |
| | - | - | - | - | - | 8.00 | - | - | 8.00 | - | - | - |
| | - | - | - | - | - | - | - | - | 8.00 | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | 0.25 |
| | - | - | - | - | - | - | - | 8.00 | - | - | - | .8 pto |
| | - | - | - | - | - | - | - | 8.00 | - | - | - | - |
| | - | - | - | - | - | - | - | 8.00 | - | - | - | - |
| | - | - | - | 8.00 | - | - | - | 8.00 | - | - | - | - |
| | - | - | - | 8.00 | - | - | - | 8.00 | - | - | - | - |
| | - | - | - | 8.00 | - | - | - | - | - | - | - | - |
| | - | - | - | 8.00 | - | - | - | - | - | - | 8.00 | - |
| | - | - | - | 8.00 | - | - | - | - | - | - | 8.00 | |
| | - | - | - | - | - | - | - | - | - | - | 8.00 | - |
| | 8.00 | - | - | - | - | - | - | - | - | - | 8.00 | - |
| | - | 8.00 | - | - | - | - | 8.00 | - | - | - | 8.00 | - |
| | - | - | - | - | - | - | 8.00 | - | - | - | - | - |
| | - | - | - | - | - | - | 8.00 | - | - | - | - | - |
| | - | 8.00 | - | - | - | - | 8.00 | - | - | - | - | - |
| | - | - | - | - | - | - | 8.00 | - | | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | 4.00 | - | - | - | - | - | - | - | 8.00 | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total to Date** | **8.00** | **16.00** | **4.00** | **40.75** | | **8.00** | **40.00** | **40.00** | **40.00** | | **48.00** | **0.25** |

*(Handwritten notes in right margin: "3.25 NO PAY", "NO PAY")*

Total PTO hours for 2002:          232.00  DOH 11/25/74
Carry Over from 2001:              13.00
Total hours taken in 2002:         245.00          12/19-2.50 upto/no hrs remaining
**PTO remaining in 2002:**         **-**          **12/11 & 12-overpaid;take out 1/3/03**



*(Handwritten notes at bottom)*

12/11   3.25 HRS  }  NO TIME
12/12   8 HRS     }  REMAINING

12/19   2.50  >  NO TIME
                  REMAINING



# PAPASTAVROS' ASSOCIATES

## M E D I C A L   I M A G I N G   L.L.C.

1701 Augustine Cut-Off, Suite 100, Professional Building IV, Wilmington, DE 19803  TEL. (302) 652-3016  FAX (302) 652-2534
40 Polly Drummond Hill Road, Newark, DE 19711  TEL.(302) 737-5990  FAX (302) 738-9176
2600 Summit Bridge Road, Glasgow, DE 19702  TEL. (302) 832-5590 FAX (302) 832-9971

Garth A. Koniver, MD F.A.C.R.
Thomas W. Fiss, MD F.A.C
Majid Mansoory, MD

Diagnostic Roentgenology
Computerized Tomography
Magnetic Resonance Imaging
Nuclear Medicine including cardiac
Ultrasound including cardiac
Mammography
Non-Invasive Vascular Laboratory

Stephen J. Lawless, MD
James A. Murphy, MD
John D. McAllister, II MD
Anthony J. Scola, MD
Indukumar Solanki, MD
Steven A. Ebner, MD
Michael Leviton, MD

**To:**   Valerie Reeves

**From:**   Andrea Baxter

**Date:**   January 15, 2002

**RE:**   **EXCESSIVE PTO – FORMAL WRITTEN WARNING**

On your last performance review dated December 1, 2000, you were given a warning regarding taking PTO that you did not earn.  On Friday, December 28, 2001 you again took 3 hours over your PTO allotment (please refer to attachment). Since we do not recognize time off without pay,  this will serve as a Formal Written Warning and will be placed in your personnel file.  Any further violation of will result in further disciplinary action.

It is advised that if you have any questions regarding the amount of PTO that you contact me.

I have read the above Formal Written Warning and understand that any future violation will be result in further disciplinary action up to and including termination.

Signature – Valerie Reeves                     1/15/02
Date

Signature – Witness                     1/15/02
Date

ATTACHMENT 3

12/19/03 Spoke c̄ Valerie
re her last month.

Valerie Reeves
_____

8 Delft Court
Middletown, DE 19709
(302) 834-0312
vreeves55@hotmail.com

December 12, 2003

Susan Levin, Human Resources
Papastavros' Associates Medical Imaging
1701 Augustine Cut-Off, Suite 100
Wilmington, DE 19803

Dear Susan,

This letter serves to inform you of my intention to retire from full-time employment of Papastavros Associates, effective January 23, 2004.

It has been an honor and a pleasure to serve the patients at this location because I realize that minorities constitute an underserved of the population.

Very truly yours,

(Mrs.) Valerie Reeves

Valerie Reeves

Valerie Reeves

8 Delft Court<br>
Middletown, DE 19709<br>
(302) 834-0312<br>
vreeves55@hotmail.com

December 12, 2003

Donna Grace, Operations Manager
Papastavros' Associates Medical Imaging
1701 Augustine Cut-Off, Suite 100
Wilmington, DE 19803

Dear Donna,

This letter serves to inform you of my intention to retire from full-time employment of Papastavros Associates, effective January 23, 2004.

I have devoted my considerable talents to running the Pennsylvania Avenue office for 15 years, only to have that effort compromised by your unprofessional management style. Your willful neglect of my request for supplies (copier), and the maintenance of this site (rugs **never** shampooed), demonstrates that fact.

It has been an honor and a pleasure to serve the patients at this location because I realize that minorities constitute an underserved portion of the population.

Very truly yours,


(Mrs.) Valerie Reeves

*Valerie Reeves*

EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VALERIE REEVES,                          :
                                         :
        Plaintiff,               :
                                         :
    v.                                   :          C.A. No. 05-7 JJF
                                         :
RADIOLOGY ASSOCIATES, INC.,              :          JURY TRIAL DEMANDED
                                         :
       Defendant.               :

### AFFIDAVIT OF ANDREA BAXTER

County of New Castle        :
                            :          ss
State of Delaware           :

I, Andrea Baxter, being duly sworn, do depose and say that:

1. I am the Chief Technologist at Papastavros' Medical Imaging, L.L.C. and at all relevant times was the supervisor of Ms. Reeves.

2. I attempted to contact Ms. Reeves the morning of February 18, 2003. She returned my message and indicated that she was in Sussex County. I advised her that her site would be closed due to the state of emergency and gave her a choice as to where to report, either to the Augustine Cut-Off location, which was just outside the city limits, Polly Drummond Hill Road, or to the Glasgow site, which was closer to Ms. Reeves' home in Middletown, Delaware. Ms. Reeves choose the Glasgow location and reported late to that location. Ms. Reeves was not compelled by threat to work and was paid for her work. Ms. Reeves was not assigned to the location because of her race, but solely because her assigned office was closed.

SWORN TO AND SUBSCRIBED before me this __1st__ day of ~~October~~ November 2005.

**DANIEL W. SCIALPI**
**ATTORNEY AT LAW**
**Notarial Officer, State of Delaware**
**Pursuant to 29 Del. C. §4323 (a)(3)**

# EXHIBIT H

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fountain, Darryl K.** 📷 | 198, 2005 | 7/11/2005 | 5, 18, 29, 30, 41, 2004 | Three-year suspension | DLRPC 1.5(f) |
| | | | | | DLRPC 1.15(a) |
| | | | | | DLRPC 1.15(b) |
| | | | | | DLRPC 1.15(d) |
| | | | | | DLRPC 1.15A |
| | | | | | DLRPC 1.16(d) |
| | | | | | DLRPC 3.4(c) |
| | | | | | DLRPC 8.1(b) |
| | | | | | DLRPC 8.4(d) |



Home | Delaware Courts | State of Delawa

**Office of Disciplinary Counsel**
of the Supreme Court of Delaware

Click to view: All Cases | Public Cases | Private Sanctions | Unauthorized Practice of Law

## Digest of Lawyer Discipline

Top H

[        Search field        ]  **Search**   Show Search Options   Clear Search

432 cases                                                                    Pr

1 2 3 4 5 6 7 8

| Caption | Supreme Court Number | Sanction Date | Board Case Numbers | Sanction Imposed | Rules Involved |
|---|---|---|---|---|---|
| Clark, Sidney J. | 250 A.2d 505 | 1/01/1969 | N/A | Disbarment | N/A |
| Clyne, Jr., John P. | 581 A.2d 1118 | 1/01/1990 | N/A | Disbarment | DLRPC 1.3 DLRPC 3.4(c) DLRPC 8.1(b) DLRPC 8.4(c) |
| Collins, Phillip J. | Misc. Docket 407 | 4/20/2005 | N/A | Indefinite suspension | N/A |
| Cordrey, John H. | 257, 1999 | 7/29/1999 | 100, 1997 12, 1998 | Two-year probation | DLRPC 1.2(a) DLRPC 1.3 DLRPC 1.4(a) DLRPC 3.2 DLRPC 8.4(d) |
| Cordrey, John H. | 517, 1997 | 2/26/1998 | 32, 1997 | One-year probation w/conditions; public reprimand | DLRPC 1.1 DLRPC 1.2(a) DLRPC 1.3 DLRPC 1.4(a) DLRPC 3.2 DLRPC 8.4(d) |
| Culbertson | N/A | 10/11/1945 | N/A | Resignation by consent | N/A |
| Dodge and O'Brien | 249, 1989 | 7/17/1989 | 7, 1988 | Public reprimand | DLRPC 8.4(d) |
| Dodge, Gary R. | 190, 2002 | 5/14/2002 | 24, 2001 | 18-month probation; public reprimand | DLRPC 1.15(b) DLRPC 5.3 DLRPC 8.4(d) |
| Doelze, Kurt J. | 170, 2005 | 4/29/2005 | 21, 2004 | Disbarment by consent | DLRPC 8.4(b) |
| Doelze, Kurt J. | 231, 2004 | 6/01/2004 | 21, 2004 | Interim suspension | N/A |
| Doelze, Kurt J. | 22, 2002 | 1/31/2002 | 52, 2000 | Public reprimand | DLRPC 8.4(c) |
| Dorsey, L. Coleman | 217, 1996 | 10/15/1996 | 37, 1993 | Disbarment | DLRPC 8.4(b) DLRPC 8.4(c) |

| Name | Docket | Date | Board Case | Disposition | Rules |
|---|---|---|---|---|---|
| Dorsey, L. Coleman | 281, 1993 | 8/09/1993 | N/A | Interim suspension | N/A |
| Doughty, Stephen P. | 163, 2003 | 9/17/2003 | 4, 2002 | Public reprimand; two year probation | DLRPC 1.15(b) DLRPC 1.15(d) DLRPC 8.4(c) DLRPC 8.4(d) |
| Draper, Jr., William H. | 317 A.2d 106 | 1/01/1974 | N/A | Suspension, six months | N/A |
| Eberly, Sr., James C. | Misc. Docket 407 | 4/20/2005 | N/A | Indefinite suspension | N/A |
| Eberly, Sr., James C. | 396, 1986 | 2/18/1987 | 926, 929 | Public reprimand | N/A |
| England, Jr., Clyde M. | 421 A.2d 885 | 1/01/1980 | N/A | Disbarment | N/A |
| Evans, Donald E. | 678, 2002 | 2/26/2003 | 49, 2001 | Two-year probation; public reprimand | DLRPC 1.15(b) DLRPC 8.4(d) |
| Faraone, John A. | 42, 1998 | 3/29/1999 | N/A | Reinstatement | N/A |
| Faraone, John A. | 42, 1998 | 7/31/1998 | 11, 82, 1996 | Suspension, six months; 18-mo. probation | DLRPC 1.2(d) DLRPC 4.1(a) DLRPC 4.1(b) DLRPC 4.3 DLRPC 8.4(c) |
| Farnlof, Mark E. | 393, 1996 | 10/15/1996 | 3, 1995 | Indefinite suspension | DLRPC 3.4(c) DLRPC 8.1(b) |
| Figliola, Jr., Anthony A. | 456, 1995 | 11/27/1995 | 41, 1995 | Reinstatement | N/A |
| Figliola, Jr., Anthony A. | 652 A.2d 1071 | 1/01/1995 | N/A | Suspension, six months and one day | DLRPC 1.15(a) DLRPC 1.15(d) DLRPC 8.4(c) DLRPC 8.4(d) |
| Fink, Kenneth E. | 250, 2003 | 6/03/2003 | 14, 2000 | Disbarment by consent | DLRPC 8.4(b) |
| Fink, Kenneth E. | 90, 2000 | 3/07/2000 | 39, 1999 | Interim suspension | DLRPC 8.4 |
| Flynn, Jr., James J. | 431, 2001 | 9/21/2001 | 20, 2000 | Reinstatement w/conditions; 4-year probation | N/A |
| Fountain, Darryl K. | 198, 2005 | 7/11/2005 | 5, 18, 29, 30, 41, 2004 | Three-year suspension | DLRPC 1.5(f) DLRPC 1.15(a) DLRPC 1.15(b) DLRPC 1.15(d) DLRPC 1.15A DLRPC 1.16(d) DLRPC 3.4(c) DLRPC 8.1(b) DLRPC 8.4(d) |
| Fox, Valerie E. | 484, 1995 | 12/28/1995 | 17, 1995 | Public reprimand w/conditions | DLRPC 1.5 |

| Name | Number | Date | | Sanction | Rules |
|---|---|---|---|---|---|
| **Frabizzio, Samuel J.** | 369, 1987 | 3/29/1988 | 1025 | Reinstatement | N/A |
| **Frabizzio, Samuel J.** | 508 A.2d 468 | 1/01/1986 | N/A | Instructions to suspended atty. | N/A |
| **Frabizzio, Samuel J.** | 498 A.2d 1076 | 1/01/1985 | N/A | Two-year suspension | N/A |
| **Freebery, Sherry L.** | 298, 2004 | 7/19/2004 | 22, 2004 | Interim suspension stayed | N/A |
| **Froehlich, Mark H.** | 213, 2003 | 12/08/2003 | 17, 2002 | Public reprimand; two year probation | DLRPC 1.15(b) DLRPC 1.15(d) DLRPC 1.15(n) DLRPC 5.3 DLRPC 8.4(c) DLRPC 8.4(d) DLRPC IG 2 |
| **Funk, Joseph E.** | 154, 1997 226, 1999 | 12/16/1999 | 40, 45, 1995 82, 1997 | Disbarment | DLRPC 1.1 DLRPC 1.3 DLRPC 1.4(a) DLRPC 1.15(a) DLRPC 1.15(b) DLRPC 1.15(d) DLRPC 3.3(a) DLRPC 8.4(b) DLRPC IG 2 |
| **Funk, Joseph E.** | 408, 1997 | 9/29/1997 | N/A | Interim suspension | DLRPC 8.4(b) |
| **Funk, Joseph E.** | 101, 1994 | 4/14/1994 | 25, 1993 | Public reprimand | DLRPC 3.3(a) DLRPC 8.4(d) |
| **Funk, Joseph E.** | 459, 1991 | 12/31/1991 | 9, 1990 30, 35, 1991 | Two-year probation, consensual | DLRPC 1.3 DLRPC 1.4(a) DLRPC 8.4(b) |
| **Gabay, Joseph A.** | 409, 2002 | 8/27/2002 | 26, 2001 | Two-year probation; public reprimand | DLRPC 1.15(b) DLRPC 1.15(d) DLRPC 8.4(d) |
| **Garrett, Jr., William L.** | 456, 2003 | 10/23/2003 | 32, 2002 | Three-year suspension | DLRPC 1.15(a) DLRPC 1.15(f) DLRPC 8.4(b) DLRPC 8.4(d) DLRPC IG 2 |
| **Goldstein, Louis** | 266, 1997 | 7/21/1997 | 4, 57, 1995 | Public reprimand | DLRPC 1.15(a) DLRPC 1.15(d) DLRPC 8.4(d) |
| **Goldstein, Louis** | 85 A.2d 361 | 1/01/1951 | N/A | Public reprimand w/conditions | N/A |
| **Green, Peter W.** | 249, 1975 | 11/18/1975 | N/A | Disbarment | N/A |
| **Green, Peter W.** | 331 A.2d 145 | 1/01/1975 | N/A | Public reprimand w/conditions | N/A |
| **Greene, Jr., Andrew A.** | 80, 1997 | 10/23/1997 | 7, 1995 | Disbarment | DLRPC 1.1 DLRPC 1.3 DLRPC 1.15(a) DLRPC 1.15(b) |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | DLRPC 1.15(d) DLRPC 8.4(b) DLRPC 8.4(c) |
| **Greene, Jr., Andrew A.** | 132, 1995 | 4/20/1995 | N/A | Interim suspension | N/A |
| **Gregory, Theopolis K.** | 433, 1995 | 1/04/1996 | 12, 1994 | Public reprimand w/conditions | DLRPC 1.15(a) DLRPC 5.3(b) |
| **Gross** | N/A | 1/01/1993 | UPL 92-8 | N/A | N/A |
| **Guy, Samuel L.** | 639, 2001 | 1/10/2002 | 29, 2001 | Reinstatement | N/A |
| **Guy, Samuel L.** | 329, 1999 45, 2000 | 6/28/2000 | 57, 61, 90, 1996 3, 107, 1997 20, 21, 1998 | Suspension, seven months | DLRPC 1.1 DLRPC 1.2(a) DLRPC 1.3 DLRPC 1.4(a) DLRPC 3.2 DLRPC 3.4(a) DLRPC 8.1(b) DLRPC 8.2 |

1 2 3 4 5 6 7 8

send an email containing a hyperlink to the selected document

Pr

Get Adobe Reader    Documents are created in Adobe PDF.

# EXHIBIT I

LEXSEE 2003 U.S. DIST LEXIS 10171

**CHRISTOPHER J. AROTS, Plaintiff v. SALESIANUM SCHOOL, INC., Defendant.**

**C.A.No. 01–334 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 10171*

**June 17, 2003, Decided**

**DISPOSITION:** [*1] Motion for summary judgment granted. Judgment entered in favor of the defendant.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee filed an action against defendant former employer alleging discrimination in violation of the Americans with Disabilities Act (ADA), *42 U.S.C.S. § 12101* et seq. The employer filed a motion to dismiss or alternatively for summary judgment on the grounds that the employee's complaint was not filed within the time limits and that service of process was not timely.

**OVERVIEW:** The employee was terminated from his employment as a music teacher after 23 years. After the Equal Employment Opportunity Commission (EEOC) investigated the employee's disability discrimination claim and mailed its right to sue letter to the employee on December 15, 2000. The employee claimed that he did not receive the letter until February 23, 2001 and filed his lawsuit on May 23, 2001. Service was not made upon the employer until December 20, 2002. The court held that the employee's complaint was not filed within the 90 day limitations period under *42 U.S.C.S. § 2000e-5(f)(1)*. Because there was no evidence to support the employee's bare assertion that he did not receive the letter until February 23, 2001, the court assumed, pursuant to Fed. R. Civ. P. 6(e), that the right to sue letter was received within three business days. The complaint was not timely when it was filed nearly 180 days after the presumed receipt of the right to sue letter. The court did not find any grounds for equitable tolling. The court found that the employee's service of the complaint 15 months after the expiration of the 120 day period provided further support that the claim should be dismissed.

**OUTCOME:** The court granted the employer's motion for summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party.

*Labor & Employment Law > Discrimination > Disability Discrimination > Other Laws*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations*

[HN2] Before bringing a discrimination claim in federal court pursuant to the Americans with Disabilities Act, *42 U.S.C.S. § 12101* et seq., the aggrieved party must file a charge of discrimination with the Equal Employment Opportunity Commission. If the EEOC dismisses the charge, the aggrieved party may sue the employer directly within 90 days of the receipt of the EEOC notification of dismissal. *42 U.S.C.S. § 2000e-5(f)(1)*. This notification comprises a letter of determination informing the party of his or her right to sue and the ninety-day time period in which to file suit. 29 C.F.R. § 1601.19(a) (2003). When the receipt date of the right to sue letter is in dispute, and there is no evidence pertaining to when the letter was actually received, Fed. R. Civ. P. 6(e) will control by invoking the presumption of receipt within three days of mailing. Furthermore, without evidence regarding the plaintiff's receipt of the right to sue notice, any attempt to file suit even one day after the expiration of the ninety-day time period must result in dismissal. Procedural requirements established by Congress for gaining access to

Case 1:05-cv-00007-JJF     Document 11     Filed 11/02/2005     Page 41 of 62

Page 2
2003 U.S. Dist. LEXIS 10171, *1

federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.

*Governments > Legislation > Statutes of Limitations > Tolling*

[HN3] It is well–established that federal courts should invoke the equitable tolling doctrine "only sparingly." In the United States Court of Appeals for the Third Circuit, equitable tolling may be appropriate in certain limited contexts: (1) if the defendant actively misled the plaintiff; (2) if the plaintiff was prevented, in some extraordinary way, from asserting his rights; (3) if the plaintiff timely asserted his rights mistakenly in the wrong forum; (4) if the claimant received inadequate notice of his right to file a suit; (5) if a motion for appointment of counsel is pending; or (6) if the court misled the plaintiff into believing that he had done everything required of him. In each of these contexts, the party seeking equitable tolling must have demonstrated reasonable diligence in investigating and filing his claims.

*Governments > Legislation > Statutes of Limitations > Tolling*

[HN4] Tolling may be warranted if the mental incompetence motivated the injury which the plaintiff seeks to remedy, for example, when a mentally incompetent plaintiff seeks tolling to allow him to sue for his involuntary commitment during the entire limitations period.

*Governments > Legislation > Statutes of Limitations > Tolling*
*Civil Procedure > Joinder of Claims & Parties > Self–Representing Parties*

[HN5] Equitable tolling is more appropriate when the litigant is inexperienced and proceeding pro se. Nonetheless, a plaintiff's pro se status does not, alone, justify the application of equitable principles to excuse the failure to meet procedural requirements. Indeed, although conformity with procedural rules should be viewed liberally when a litigant is acting pro se, the rules are not suspended simply because the litigant is unrepresented by counsel. The pro se complainant must exercise reasonableness and good faith in prosecution of his claims.

**COUNSEL:** Christopher J Arots, PLAINTIFF, Pro se, Delhaven, NJ USA.

For Salesianum School, Inc, DEFENDANT: Mark L Reardon, Elzufon Austin Reardon Tarlov & Mondell, PA, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On May 23, 2001, Christopher J. Arots filed a *pro se* complaint against Salesianum School, Inc. ("Salesianum"), alleging employment discrimination in violation of the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101, et seq.* Presently before the court is the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (D.I. 7). For the following reasons, the court will grant the motion.

**II. BACKGROUND**

Arots worked as a music teacher at Salesianum School for twenty–three years. On January 13, 2000, the school terminated his employment. The plaintiff alleges that his discharge was motivated by discrimination concerning an unnamed disability. Accordingly, Arots filed a charge **[*2]** with the Equal Employment Opportunity Commission ("EEOC") on August 24, 2000. On December 15, 2000, the EEOC mailed to Arots and to legal counsel for Salesianum a "Dismissal and Notice of Rights" letter stating that any lawsuit arising from the same charge must be filed within ninety days of the receipt of the letter. Salesianum received the letter on December 22, 2000; Arots maintains that he received the letter on February 23, 2001.

Arots filed the present suit on May 23, 2001. Nearly one year later, Arots had yet to provide notice of the lawsuit to Salesianum. Accordingly, on April 30, 2002, the court ordered Arots to show good cause within twenty days as to why the complaint should not be dismissed without prejudice pursuant to *Federal Rule of Civil Procedure 4(m)*. On May 14, 2002, Arots mailed the Notice and Request for Waiver of Service and Summons to the defendant, which he then filed on May 23, 2002. The notice was defective, however, in that it provided Salesianum with only five days to respond. Moreover, Arots still had not served the defendant with process. Consequently, the court issued a second order on December 9, 2002 requiring Arots to serve the summons and complaint **[*3]** upon the defendant within ten days. Eleven days later, on December 20, 2002, Arots served Salesianum with process.

**III. STANDARD OF REVIEW**

The defendant moves for dismissal or, in the alternative, summary judgment. Because the court will consider evidence outside the scope of the pleadings, it will treat the present motion as a motion for summary judg-

ment pursuant to *Federal Rule of Civil Procedure 56. See, e.g., Public Interest Research Group v. Powell Duffryn Terminals, 913 F.2d 64, 71* (converting motion to dismiss to motion for summary judgment when additional evidence was submitted). [HN1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *FED. R. CIV. P. 56(c); see also Boyle v. County of Allegheny Pa., 139 F.3d 386, 392 (3d. Cir. 1998).* Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving [*4] party. *Boyle, 139 F.3d at 392.* A fact is material if it might affect the outcome of the suit. *Id.* (Citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)).* An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields, 178 F.3d 170, 173–74 (3d Cir. 1999).*

## IV. DISCUSSION

### A. Compliance with the Ninety–Day Statutory Limitations Period

The defendant first moves for summary judgment on the basis that the plaintiff's claim is untimely for failure to file within the prescribed statutory period. For the reasons that follow, the court agrees that the present suit is untimely, and that the plaintiff has not adduced evidence sufficient to warrant tolling of the limitations period.

### 1. Timeliness of the Plaintiff's Claim

[HN2] Before bringing a discrimination claim in federal court pursuant to the ADA, the aggrieved party must file a charge of discrimination with [*5] the EEOC. If the Commission dismisses the charge, the aggrieved party may sue the employer directly within ninety days of the receipt of the EEOC notification of dismissal. *42 U.S.C. § 2000e–5(f)(1) (2003).* This notification comprises a letter of determination ("Dismissal and Notice of Rights") informing the party of his or her right to sue and the ninety–day time period in which to file suit. *29 C.F.R. § 1601.19(a) (2003).* When the receipt date of the right to sue letter is in dispute, and there is no evidence pertaining to when the letter was actually received, *Rule 6(e) of the Federal Rules of Civil Procedure* will control by invoking the presumption of receipt within three days of mailing. *Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999).* Furthermore, without evidence re-

garding the plaintiff's receipt of the right to sue notice, any attempt to file suit even one day after the expiration of the ninety–day time period must result in dismissal. *Mosel v. Hills Department Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986)* (citing cases); *see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984)* [*6] *(per curiam)* ("Procedural requirements established by Congress for gaining access to federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

In this case, it is undisputed that the EEOC issued and mailed the Dismissal and Notice of Rights letter on December 15, 2000. The defendant received the letter on December 22, 2000. By contrast, Arots maintains that he received the letter on February 23, 2001. Because he offers no evidence in support of this bare assertion, however, *Rule 6(e),* presuming receipt after three days from the mailing date, must be applied. Therefore, the presumed date of receipt is December 18, 2000, or three days after the mailing date of December 15, 2000. Because the present suit was filed nearly 180 days after the presumed receipt of the right to sue letter, it is apparent that the action is untimely.

### 2. Equitable Tolling of the Statutory Period

Although not raised by the *pro se* plaintiff, the court will consider whether equitable tolling of the ninety–day statutory period is appropriate in this case. [HN3] It is well-established that federal courts should invoke the equitable tolling doctrine 'only sparingly. [*7] ' *United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1999)* (quoting *Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990)).* In the Third Circuit, equitable tolling may be appropriate in certain limited contexts: (1) if the defendant actively misled the plaintiff; (2) if the plaintiff was prevented, in some extraordinary way, from asserting his rights; (3) if the plaintiff timely asserted his rights mistakenly in the wrong forum; (4) if the claimant received inadequate notice of his right to file a suit; (5) if a motion for appointment of counsel is pending; or (6) if the court misled the plaintiff into believing that he had done everything required of him. *Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).* In each of these contexts, the party seeking equitable tolling must have demonstrated reasonable diligence in investigating and filing his claims. *New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997).*

In his answer to the defendant's motion, the plaintiff reports that, after being discharged from his job, he fell into a serious depression and became alcoholic and suicidal. Pl. [*8] 's Response to Def.'s Motion for Summary Judgment (D.I. 11) at 1. Arots also explains that he waited

to receive his pension check before filing suit. *Id.* at 2. These facts, although unfortunate, do not establish an extraordinary barrier to the plaintiff's ability to assert his rights in a timely manner. In this circuit, "mental incompetence is not *per se* a reason to toll the statute of limitations." *Lake v. Arnold, 232 F.3d 360, 371 (3d Cir. 2000)* (citing *Barren by Barren v. United States, 839 F.2d 987 (3d Cir. 1988))*. [HN4] Tolling may be warranted if the mental incompetence motivated the injury which the plaintiff seeks to remedy – for example, when a mentally incompetent plaintiff seeks tolling to allow him to sue for his involuntary commitment during the entire limitations period. *Id.* (citing *Eubanks v. Clarke, 434 F. Supp. 1022 (E.D. Pa. 1977))*. From the bare facts asserted by the plaintiff, there appears to be no such relationship between his depression and alcoholism and the injury he seeks to redress, as these hardships occurred after his discharge from Salesianum. In any case, Arot's conclusory and unsupported statements, [*9] without more, do not support a finding that equitable tolling is warranted. *See, e.g., Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)* ("[The plaintiff's] conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling.").

In his answer, Arots also states that he thought he had filed suit within the statutory time frame. *See, e.g.,* Pl.'s Response to Def.'s Motion at 2 ("I was told how much time I had to file a law suit by federal court, and I met the time line."). If this bare statement may be construed as an assertion that his right to sue notice was insufficient, this argument fails as well. By following *Rule 6(e)*, which is appropriately applied when the date of receipt is in dispute without supporting evidence, Arots is presumed to have received adequate notice of the time constraint through the right to sue letter. The plaintiff offers no evidence to rebut this presumption.

Likewise, if by his statements Arots intends to suggest that the court misled him into [*10] believing that he had done everything required of him, this argument is unsupported. The court has issued no orders or opinions addressing the timeliness of the plaintiff's claims prior to the present memorandum. There is no evidence, or even suggestion, other than the plaintiff's vague assertions, that any employee of the court misled him into believing that he had complied with the statutory deadline. Thus, the court will not found its decision on any such implication.

Finally, the court considers the plaintiff's *pro se* status. [HN5] Equitable tolling is more appropriate when the litigant is inexperienced and proceeding *pro se. Ricciardi v. Consolidated Rail Corp., 2000 U.S. Dist. LEXIS 14173,*

*2000 WL 1456736, at *4 (E.D.Pa. 2000)* (citing *Kocian Getty Refining & Marketing Co., 707 F.2d 748, 755 (3d Cir. 1983))*. Nonetheless, a plaintiff's *pro se* status does not, alone, justify the application of equitable principles to excuse the failure to meet procedural requirements. Indeed, "although ... conformity with procedural rules should be viewed liberally when a litigant is acting *pro se,* the rules are not suspended simply because the litigant is unrepresented by counsel. The [*11] *pro se* complainant must exercise reasonableness and good faith in prosecution of his claims." *Carter v. Three Unknown Police Officers, 112 F.R.D. 48, 52 (D. Del. 1986); see also McNeil v. United States, 508 U.S. 106, 113, 124 L. Ed. 2d 21, 113 S. Ct. 1980 (1993)* ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). In this case, there is no evidence that Arots encountered any undue hardship in filing the suit, or that any of the other considerations for equitable tolling are present. Furthermore, as discussed below regarding the plaintiff's extremely untimely service of process upon the defendants, it seems apparent that Arots did not exercise due diligence in pursuing his claims. Therefore, despite the plaintiff's *pro se* status, tolling of the statutory guidelines is not warranted.

**B. Timeliness of Service of the Complaint and Summons**

The defendant also moves for summary judgment on the basis that the complaint was not timely served. Because the court has found that the present action must be dismissed for other reasons, it [*12] need not address this alternative argument at length. The court notes, however, that the plaintiff failed to serve the summons and complaint upon the defendant until December 20, 2002, approximately fifteen months after the expiration of the 120-day period, and only after two court orders requiring the plaintiff to show good cause for his failure to timely serve and ordering him to effect service. When considered in light of the plaintiff's failure to timely file suit, the court finds, unequivocally, that the present action must be dismissed. *See, e.g., Fernandez v. I.R.S., 1994 U.S. Dist. LEXIS 10619, 1994 WL 591556 (D.N.J. 1994)* (dismissing *pro se* complaint for failure to serve within 120-day period); *Momah v. Albert Einstein Med. Ctr., 158 F.R.D. 66, 69–70 (E.D. Pa. 1994)* (dismissing complaint served one day after expiration of 120-day period when defendant hospital had conducted business "in the broad light of day" and plaintiff had been employed there); *Parker v. State of Delaware, 2000 U.S. Dist. LEXIS 3112, 2000 WL 291537, at *2 (D. Del. 2000)* (dismissing complaint when plaintiff failed to serve defendants within 120-day period and noting that "extension is particularly inappropriate [*13] in the present case because plaintiffs failed to file

their complaint within the 90-day 'right to sue' period for Title VII and ADA actions.").

## VI. CONCLUSION

Although he received adequate notice of his right to sue and the associated time constraint, the plaintiff failed to file suit within the prescribed statutory period, and he did not present evidence to warrant equitable tolling of the limitations period. Furthermore, Arots failed to timely serve the summons and complaint upon the defendant. As such, the present action must be dismissed.

THEREFORE, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss or for Summary Judgment (D.I. 7) is GRANTED.

2. Judgment be and is hereby entered in favor of the defendant.

3. The Clerk of the court is directed to close this case.

Dated: June 17, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2005 U.S. DIST LEXIS 167

**ANTHONY DUPREE, JR., Plaintiff, v. UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 27 and ALLEN FAMILY FOODS, INC., Defendants.**

**Civil Action No. 03-930 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 167*

**January 7, 2005, Decided**

**DISPOSITION:** Defendants' Motions for Summary Judgment were granted. Judgment was entered.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a union and an employer, motioned for summary judgment on plaintiff employee's complaint against defendants alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq.

**OVERVIEW:** Defendants moved for summary judgment on the basis that the employee's claim was untimely for failure to file within the prescribed statutory period. The court noted that the Equal Employment Opportunity Commission issued and mailed the dismissal and notice of rights letter on June 10, 2003. The employer received the letter on or about June 14, 2003. The employee maintained that he received the letter on July 7, 2003. Because he offered no evidence in support of his bare assertion, *Fed. R. Civ. P. 6(e)*, presuming receipt after three days from the mailing date, had to be applied. Therefore the presumed date of receipt was June 13, 2003, or three days after the mailing date of June 10. Because the suit was filed 115 days after the presumed receipt of the right to sue letter, the action was untimely. The record was void of any equitable considerations which would allow the court to toll the 90-day statute of limitations period. The employee did not encounter any undue hardship in filing the suit. He did not exercise due diligence in pursuing his claims.

**OUTCOME:** Defendants' motion for summary judgment was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
*Civil Procedure > Summary Judgment > Summary*

*Judgment Standard*
[HN1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, *Fed. R. Civ. P. 56(c)*. Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. A fact is material if it might affect the outcome of the suit. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party.

*Civil Procedure > Pleading & Practice > Pleadings > Time Limitations*
*Labor & Employment Law > Discrimination > Title VII*
[HN2] Before bringing a discrimination claim in federal court pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., the aggrieved party must file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). If the Commission dismisses the charge, the aggrieved party may sue the employer directly within 90 days of the receipt of the EEOC notification of dismissal, *42 U.S.C.S. § 2000e-5(f)(1) (2003)*. This notification comprises a letter of determination informing the party of his or her right to sue and the 90-day time period in which to file suit, *29 C.F.R. § 1601.19(a) (2003)*. When the receipt date of a right to sue letter is in dispute, and there is no evidence pertaining to when the letter was actually received, *Fed. R. Civ. P. 6(e)* will control by invoking the presumption of receipt within three days of mailing. Furthermore, without evidence regarding the plaintiff's receipt of the right to sue notice, any attempt to file suit even one day after the expiration of the 90-day time period must result in dismissal.

*Labor & Employment Law > Discrimination > Title VII*

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations*

[HN3] The court will consider whether equitable tolling of the 90-day statutory period of *42 U.S.C.S. § 2000e-5(f)(1)* is appropriate. It is well-established that federal courts should invoke the equitable tolling doctrine only sparingly. Equitable tolling may be appropriate in certain limited contexts: (1) if the defendant actively misled the plaintiff; (2) if the plaintiff was prevented, in some extraordinary way, from asserting his rights; (3) if the plaintiff timely asserted his rights mistakenly in the wrong forum; (4) if the claimant received inadequate notice of his right to file a suit; (5) if a motion for appointment of counsel is pending; or (6) if the court misled the plaintiff into believing that he had done everything required of him. In addition, the court cannot even consider equitably tolling the statute of limitations unless the plaintiff exercised due diligence in pursuing his claim.

*Civil Procedure > Joinder of Claims & Parties > Self-Representing Parties*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations*

[HN4] Equitable tolling is particularly appropriate when a litigant is inexperienced and proceeding pro se. Nonetheless, a plaintiff's pro se status does not, alone, justify the application of equitable principles to excuse the failure to meet procedural requirements. Indeed, although conformity with procedural rules should be viewed liberally when a litigant is acting pro se, the rules are not suspended simply because the litigant is unrepresented by counsel. The pro se complainant must exercise reasonableness and good faith in prosecution of his claims.

**COUNSEL: [*1]** For ANTHONY DUPREE, JR. AKA TONY DUPREE, Plaintiff, Pro se, Anthony DuPree, Jr., Pro se, Milton, DE.

For UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 27, Defendant: Albert M. Greto, O'Brien, Belland & Bushinsky, LLC, Wilmington, DE.

For ALLEN FOODS INC., Defendant: Matthew F. Boyer, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

MEMORANDUM

**I. INTRODUCTION**

On October 6, 2003, Anthony DuPree, Jr. ("DuPree") filed a *pro se* complaint against the United Food and Commercial Workers Union, Local 27 ("United Food"), and Allen Family Foods Inc. ("Allen Foods") (collectively, the "defendants"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e, et seq.* Presently before the court are the defendants' Motions for Summary Judgment (D.I. 31, 34). For the following reasons, the court will grant the motions.

**II. BACKGROUND**

DuPree worked as an assistant supervisor of the Tray Pack department at Allen Foods for about thirty days. On March 7, 2002, Allen Foods terminated his [*2] employment for gross misconduct. DuPree asserts that he was terminated because of his race. DuPree filed a charge against Allen Foods with the Department of Labor of the State of Delaware on March 7, 2002. On March 19, 2002, DuPree filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On June 10, 2003, the EEOC mailed to DuPree and to legal counsel for Allen Foods a "Dismissal and Notice of Rights" letter stating that any lawsuit from the same charge must be filed within ninety days of the receipt of the letter n1. Allen Foods received the letter on or about June 14, 2003. Dupree asserts that he received the letter on July 7, 2003.

> n1 United Food did not receive the letter from the EEOC because DuPree's charge with the EEOC was filed only against Allen Foods and not against United Food.

DuPree filed his complaint on October 6, 2003. On October 1, 2004 and October 4, 2004 Allen Foods and United Food filed their respective motions for summary judgment. DuPree has not filed an answer to the defendants' [*3] motions, despite the court's November 29, 2004 Order requiring DuPree to file an answer brief by December 20, 2004. The court, therefore, will decide the defendants' motions for summary judgment on the present record.

**III. STANDARD OF REVIEW**

[HN1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *FED. R. CIV. P. 56(c); see also Boyle v. County of Allegheny Pa., 139 F.3d 386, 392 (3d Cir. 1998).* Thus, summary judgment is appropriate only if

the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle, 139 F.3d at 392.* A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)).* An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court [*4] must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields, 178 F.3d 170, 173–74 (3d Cir. 1999).*

## IV. DISCUSSION

The defendants first move for summary judgment on the basis that DuPree's claim is untimely for failure to file within the prescribed statutory period. For the reasons that follow, the court agrees that the present suit is untimely.

### A. Timeliness

[HN2] Before bringing a discrimination claim in federal court pursuant to Title VII, the aggrieved party must file a charge of discrimination with the EEOC. If the Commission dismisses the charge, the aggrieved party may sue the employer directly within ninety days of the receipt of the EEOC notification of dismissal. *42 U.S.C. § 2000e-5(f)(1) (2003).* This notification comprises a letter of determination ("Dismissal and Notice of Rights") informing the party of his or her right to sue and the ninety-day time period in which to file suit. *29 C.F.R. § 1601.19(a) (2003).* When the receipt date of the right to sue letter is in dispute, and there is no evidence pertaining to when the letter was actually received, *Rule* [*5] *6(e) of the Federal Rules of Civil Procedure* will control by invoking the presumption of receipt within three days of mailing. *Arots v. Salesianum Sch., Inc., 2003 U.S. Dist. LEXIS 10171, No. 01-334 GMS, 2003 WL 21398017, at * 2 (D. Del. June 17, 2003)* (citing *Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999)).* Furthermore, without evidence regarding the plaintiff's receipt of the right to sue notice, any attempt to file suit even one day after the expiration of the ninety-day time period must result in dismissal. *Mosel v. Hills Department Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986)* (citing cases); *see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984) (per curiam)* ("Procedural requirements established by Congress for gaining access to federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

In this case, it is undisputed that the EEOC issued and mailed the Dismissal and Notice of Rights letter on June 10, 2003. The defendant received the letter on or about June 14, 2003. By contrast, DuPree maintains that he received the letter on July 7, 2003. Because he offers [*6] no evidence in support of this bare assertion, however, *Rule 6(e)*, presuming receipt after three days from the mailing date, must be applied. Therefore, the presumed date of receipt is June 13, 2003, or three days after the mailing date of June 10, 2003. Because the present suit was filed 115 days after the presumed receipt of the right to sue letter, it is apparent that the action is untimely.

### B. Equitable Tolling

Although not raised by the *pro se* plaintiff, [HN3] the court will consider whether equitable tolling of the ninety-day statutory period is appropriate in this case. It is well-established that federal courts should invoke the equitable tolling doctrine 'only sparingly.' *United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1999)* (quoting *Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990)).* In the Third Circuit, equitable tolling may be appropriate in certain limited contexts: (1) if the defendant actively misled the plaintiff; (2) if the plaintiff was prevented, in some extraordinary way, from asserting his rights; (3) if the plaintiff timely asserted his rights mistakenly in the wrong forum; (4) if the claimant received inadequate [*7] notice of his right to file a suit; (5) if a motion for appointment of counsel is pending; or (6) if the court misled the plaintiff into believing that he had done everything required of him. *Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).* In addition, the court cannot even consider equitably tolling the statute of limitations unless the plaintiff exercised due diligence in pursuing his claim. *See, e.g., Baldwin, 466 U.S. at 151; cf Wilson v. Dep't of Veterans Affairs, 65 F.3d 402, 404 (5th Cir. 1995)* (stating that "we have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights") (internal citations and quotations omitted)

[HN4] Equitable tolling is particularly appropriate when the litigant is inexperienced and proceeding pro se. *Ricciardi v. CONRAIL, 2000 U.S. Dist. LEXIS 14173, No. CIV. A. 98-3420, 2000 WL 1456736, at *4 (E.D. Pa. Sept. 29, 2000)* (citing *Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 755 (3d Cir. 1983)).* Nonetheless, a plaintiff's *pro se* status does not, alone, justify the application of equitable [*8] principles to excuse the failure to meet procedural requirements. Indeed, "although. . . conformity with procedural rules should be viewed liberally when a litigant is acting *pro se*, the rules are not suspended simply because the litigant is unrepresented by counsel. The *pro se* complainant must exercise reasonableness and good faith in prosecution of his claims." *Carter v. Three Unknown Police Officers, 112 F.R.D. 48, 52 (D. Del. 1986); see also McNeil v. United States, 508*

*U.S. 106, 113, 124 L. Ed. 2d 21, 113 S. Ct. 1980 (1993)* ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

In this case, the record is void of any equitable considerations which would allow the court to toll the ninety day statute of limitations period. There is no evidence that DuPree encountered any undue hardship in filing the suit, or that any of the other considerations for equitable tolling are present. It also seems apparent from the record that DuPree did not exercise due diligence in pursuing his claims. For example, DuPree did not file an answer brief to the defendants' motions, despite **[*9]** the court's November 29, 2004 Order requiring him to file an answer brief by December 20, 2004. n2 Therefore, even though DuPree is a *pro se* plaintiff, tolling of the statutory guidelines is not warranted.

> n2 Indeed, the court gave DuPree additional time in which to file an answer brief to the defendants' motions. DuPree's answer brief to Allen Foods' motion was originally due on October 15, 2004, and his answer brief to United Food's motion was originally due on October 18, 2004.

Thus, although he received adequate notice of his right to sue and the associated time constraint, the court concludes that DuPree failed to file suit within the prescribed statutory period, and he did not present evidence to warrant equitable tolling of the limitations period. As such, the defendants are entitled to summary judgment and present action must be dismissed. n3

> n3 The defendants have moved for summary judgment for additional reasons. However, since the court has found that the present case must be dismissed because DuPree's complaint is untimely, it need not address the defendants' additional arguments.

**[*10]**

Dated: January 7, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Allen Foods' Motion for Summary Judgment (D.I. 34) is GRANTED.

2. United Food's Motion for Summary Judgment (D.I. 31) is GRANTED.

3. Judgment be and is hereby entered in favor of the defendant.

4. The Clerk of the court is directed to close this case.

Dated: January 7, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2005 U.S. DIST LEXIS 1254

GODWIN J. IGWE, Plaintiff, v. E.I. DUPONT DE NEMOURS AND CO., INC.,
Defendant.

Civil Action No. 03–839 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 1254*

January 24, 2005, Decided

**DISPOSITION:** Defendant's motion for summary judgment was granted. Judgment was entered.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer filed a motion for summary judgment on plaintiff employee's action for race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and *42 U.S.C.S. § 1981*, retaliation, a violation of U.S. Const. amend. XIII, and defamation in violation of Delaware law.

**OVERVIEW:** The employee, an African–American male of Nigerian descent, was transferred to another position. He was terminated after his supervisor became dissatisfied with his performance. The court granted the employer summary judgment on the employee's claims. The court held that the employee failed to demonstrate that a genuine issue of material fact existed for a prima facie case of employment discrimination because promotion guidelines for positions other than the employee's did not show that he was qualified for the positions he sought or that there opportunities available; he kept the same salary and benefits and did not suffer adverse employment action; and he identified no one who was similarly situated but more favorably treated. The court concluded that the claims that the employer incorrectly identified his position on its website did not establish a causal link between a protected activity and adverse action in order to prove retaliatory demotion or establish a factual that he was lowered in the estimation of the community in order to prove libel. The court held that the employee failed to demonstrate with specific facts his U.S. Const. amend. XIII claim.

**OUTCOME:** The court granted the motion and entered judgment in favor of the employer and against the employee.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Fed. R. Civ. P. 56(c) provides that a party is entitled to summary judgment if a court determines from its examination of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] To defeat a motion for summary judgment, Fed. R. Civ. P. 56(c) requires the non-moving party to show that there is more than some metaphysical doubt as to the material facts. In the language of Rule 56(c), the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Thus, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis*
[HN3] In employment discrimination actions under Title VII of the Civil Rights Act of 1964, courts apply the McDonnell Douglas burden shifting analysis. Under McDonnell Douglas, a plaintiff has the initial burden to establish a prima facie case of discrimination. Once a plaintiff succeeds in establishing his or her prima facie case, the burden shifts to the defendant employer to proffer some legitimate non-discriminatory rationale for his or her action. If the employer provides the court with a non-discriminatory rationale for his or her employment decision, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual.

Case 1:05-cv-00007-JJF    Document 11    Filed 11/02/2005    Page 50 of 62

Page 2
2005 U.S. Dist. LEXIS 1254, *

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*

[HN4] The Third Circuit recognizes that the elements of the prima facie case will vary from case to case because of differing fact scenarios. To establish a prima facie case of race discrimination, a plaintiff must provide evidence that (1) he is a member of a protected class; (2) he is qualified for the sought after position; (3) he suffered adverse employment action; and (4) similarly situated non-members of the protected class were treated more favorably than he, or the circumstances of his termination give rise to an inference of race discrimination.

*Labor & Employment Law > Discrimination > Actionable Discrimination*

[HN5] The United States Supreme Court defines an adverse employment action as a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change of benefits.

*Labor & Employment Law > Discrimination > Retaliation*

[HN6] To establish a claim for retaliatory demotion, a plaintiff must first prove a prima facie case of retaliation by demonstrating that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action.

*Constitutional Law > Involuntary Servitude*

[HN7] U.S. Const. amend. XIII prohibits slavery and involuntary servitude.

*Torts > Defamation & Invasion of Privacy > Libel*

[HN8] Delaware defines libel as a false and defamatory statement of fact concerning the plaintiff made in an unprivileged publication to a third party. To be defamatory, a statement must tend to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

**COUNSEL:** **[*1]** Darryl K. Fountain, Esquire, Wilmington, Delaware, for Plaintiff.

Wendy K. Voss, Esquire, and Suzanne M. Hill, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Evelyn H. Brantley, Esquire, of E.I. DU PONT DE NEMOURS AND COMPANY, Wilmington, Delaware, for Defendant.

**JUDGES:** Farnan, District Judge.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

## MEMORANDUM OPINION

January 24, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is Defendant E.I. DuPont de Nemours & Company Incorporated's ("DuPont") Motion for Summary Judgment (D.I. 23). For the reasons discussed, the Court will grant DuPont's motion.

### BACKGROUND

Plaintiff Godwin J. Igwe, an African–American male of Nigerian descent, began his work with DuPont as a Senior Research Engineer in March of 1992. In January of 1998, DuPont eliminated Mr. Igwe's position and transferred him to its Corporate Information Science Group ("CIS"). There, Mr. Igwe became a Senior Information Scientist, a job which required him to learn new skills, but kept him at the same salary level.

At CIS, Mr. Igwe reported to Marsha Lee, who eventually became dissatisfied with Mr. Igwe's work performance. **[*2]** In September of 1999, Ms. Lee expressed to Mr. Igwe her disappointment and placed him on Written Corrective Action. Ms. Lee's dissatisfaction continued and on March 3, 2002, she placed Mr. Igwe on probation. Mr. Igwe was informed that the probationary period would extend for up to twelve months, and that he would be terminated if, during that time, he failed to demonstrate improvement. A few days later, on March 7, 2002, Mr. Igwe injured his neck in DuPont's library and left work on disability leave. Mr. Igwe was eventually approved for permanent disability status and, in October of 2002, DuPont terminated his employment. DuPont continues to pay Mr. Igwe disability compensation and provide him benefits programs.

On August 26, 2003, Mr. Igwe filed his Complaint against DuPont (D.I. 1). On March 3, 2004, Plaintiff filed his Amended Complaint (D.I. 3, 4). The Amended Complaint states four causes of action. Count I alleges discrimination on the basis of race and national origin in violation of *Title VII of the Civil Rights Act of 1964* and *42 U.S.C. § 1981*. Count II alleges retaliatory demotion in violation of Title VII. Count III alleges violation of the *Thirteenth* **[*3]** *Amendment*. Count IV alleges defamation in violation of Delaware state law.

### STANDARD OF REVIEW

[HN1] *Rule 56(c) of the Federal Rules of Civil Procedure* provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*.

[HN2] To defeat a motion for summary judgment, *Rule 56(c)* requires the non-moving party to show that there is more than "some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* (quoting *Fed.R.Civ.P. 56(c)*). However, the mere existence of some evidence in support of the nonmovant will not be sufficient [*4] to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## DISCUSSION

### A. Claim One: Employment Discrimination

[HN3] In Title VII employment discrimination actions, courts apply the McDonnell Douglas burden shifting analysis. *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. Under McDonnell Douglas, a plaintiff has the initial burden to establish a prima facie case of discrimination. *Id. at 802*. Once a plaintiff succeeds in establishing his or her prima facie case, the burden shifts to the defendant employer to proffer some legitimate non-discriminatory rationale for his or her action. Id. If the employer provides the court with a non-discriminatory rationale for his or her employment decision, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id. at 804*. [*5]

[HN4] The Third Circuit has recognized that the elements of the prima facie case will vary from case to case because of differing fact scenarios. *Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir.1999)* (citing *McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S. Ct. 1817*). In the instant action, to establish his prima facie case of discrimination, Mr. Igwe must provide evidence that (1) he is a member of a protected class; (2) he is qualified for the sought after position; (3) he suffered adverse employment action; and (4) similarly situated non-members of the protected class were treated more favorably than he, or the circumstances of his termination give rise to an inference of race discrimination. *Pivirotto, 191 F.3d at 356*.

### 1. Member of a Protected Class

It is not disputed that Plaintiff, an African-American male of Nigerian descent, is a member of a protected class.

### 2. Qualified

Mr. Igwe contends that he was qualified for a promotion, a transfer, and a bonus or raise. He contends he was qualified for a promotion because (1) he worked at DuPont for over ten years and received "glowing evaluations and award nominations" [*6] (D.I. 28, Ex. 1, at 1) and (2) DuPont promotion guidelines required that he receive a raise. Mr. Igwe contends he was qualified for a transfer because "he applied for more than a dozen other postings in the company...." Id.

In response, DuPont contends that Mr. Igwe's only evidence in support of his right to a promotion are two documents which do not apply to his job classification. Further, DuPont contends that Mr. Igwe fails to allege specific facts to support his arguments for a transfer, bonus, or raise.

The Court concludes that Mr. Igwe has failed to set forth specific facts showing he was qualified for the sought after positions. Mr. Igwe's contentions consist almost entirely of unsupported, conclusory arguments. Mr. Igwe fails to identify any specific, available opportunities for a promotion, transfer, bonus, or raise. Mr. Igwe's only specific facts are two documents outlining promotion guidelines for research and development professionals. (D.I. 26 at A518-19.) Mr. Igwe, however, was a CIS employee, not a research and development professional, and thus the promotion guidelines were inapplicable. For these reasons, the Court concludes that Mr. Igwe has not met his burden [*7] and thus does not present a genuine issue for trial with respect to the second prong of the prima facie case.

### 3. Adverse Employment Action

Mr. Igwe contends that he was subject to three types of adverse actions: (1) denial of a promotion, transfer, bonus, or raise; (2) disciplinary probation for up to twelve months (D.I. 26 at A509-12); and (3) his original transfer to CSI, which he contends limited his abilities. (D.I. 28, Ex. 2, at 2 P 7). In response, DuPont contends that these actions did not cause a significant change in Mr. Igwe's employment status.

[HN5] The United States Supreme Court has defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change of benefits." *Burlington Indus. Inc. V. Ellerth, 524 U.S. 742, 761, 141 L. Ed. 2d 633, 118 S. Ct. 2257*

*(1998)*. In this case, the Court concludes that Mr. Igwe has failed in his burden to establish an adverse employment action. As noted previously, Plaintiff has failed to set forth specific facts regarding a promotion, transfer, bonus, or raise. Further, the Court finds that Mr. Igwe has not alleged specific facts [*8] to support a finding that Plaintiff experienced a significant change in his benefits. Mr. Igwe asserts he was placed on disciplinary probation, but does not offer evidence to show how this action significantly changed his benefits. Further, it appears that, despite being on probation, Mr. Igwe enjoyed the same compensation, benefits, and core job duties that he had as a Senior Research Engineer. (D.I. 26 at A380, A560, A572).

Likewise, Mr. Igwe does not specify how his transfer to CIS significantly changed his benefits. Instead, Mr. Igwe states in a conclusory fashion that "a limitation was placed on my ability, talent, professionalism, and my accomplishments dismissed. It was like a nurse being transferred to a nurse aid assignment ... (D.I. 28, Ex. 2, at 2 P 7). Such unsupported assertions do not constitute "specific facts" as required by *Rule 56(e)*.

### 4. Discrimination

Mr. Igwe contends that similarly situated non–members of his class were treated more favorably. He further contends that the circumstances surrounding DuPont's conduct towards him raise an inference of racial discrimination. In response, DuPont contends that Mr. Igwe has failed to support his contentions [*9] with specific facts.

The Court finds that Plaintiff has failed to set forth specific facts sufficient to support the fourth element of the *McDonnell Douglas* prima facie test. Mr. Igwe does not identify a person or group of persons that were similarly situated to him but more favorably treated. Further, Mr. Igwe does not allege circumstances raising an inference of racial discrimination. Instead, Mr. Igwe asks the Court to assume that, because he was Nigerian and allegedly maltreated, he was a victim of race discrimination. *Rule 56(e)*, however, requires "specific facts showing that there is a genuine issue for trial." Mr. Igwe has set forth no such facts and thus has failed to meet the fourth element of the prima facie test.

In sum, because Mr. Igwe has not demonstrated that a genuine issue of material fact exists for elements two, three, and four of the *McDonnell Douglas* prima facie case, the Court will grant DuPont's motion on Mr. Igwe's racial and national origin discrimination claim.

### B. Claim Two: Retaliatory Demotion

Mr. Igwe contends that DuPont subjected him to a retaliatory demotion in violation of *42 U.S.C. § 1981* by (1) incorrectly [*10] identifying him as an Information Scientist, rather than a Senior Information Scientist, on DuPont's website and (2) transferring him to CIS.

[HN6] To establish a claim for retaliatory demotion, a plaintiff must first prove a prima facie case of retaliation by demonstrating that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *Sarullo v. U.S. Postal Serv., 352 F.3d 789, 800 (3d Cir. 2003)*.

The Court finds that Plaintiff has failed to establish that he was engaged in a protected activity. Further, as the Court discussed previously, Mr. Igwe's arguments in support of a finding of an adverse employment action are not supported by specific facts. Because Mr. Igwe has not established a protected activity or an adverse action, Mr. Igwe has failed to demonstrate a causal link between the two. For these reasons, the Court will grant DuPont's motion on Mr. Igwe's retaliatory demotion claim.

### C. Claim Three: *Thirteenth Amendment*

By his Complaint, Plaintiff contends that DuPont violated his "rights and privileges as guaranteed by the Thirteenth [*11] *Amendment to the United States Constitution*." (3 D.I. P 43.)

[HN7] The *Thirteenth Amendment* prohibits slavery and involuntary servitude. The Court finds that Mr. Igwe has failed to demonstrate with specific facts his allegation that DuPont violated the *Thirteenth Amendment*. For this reason, the Court will grant DuPont's motion on Mr. Igwe's *Thirteenth Amendment* claim.

### D. Claim Four: Defamation or Libel

In support of his claim for libel, Mr. Igwe claims that DuPont's website "intentionally publicly designated [Mr. Igwe] as an Information Scientist instead of Senior Information Scientist." (D.I. 28, Ex. 1, at 6–7.) Mr. Igwe contends that the inaccurate designation "humiliated him" and "damaged his reputation and standing, causing him to be denied projects for Senior Information Scientist[s]." (D.I. 28, Ex. 1, at 7.)

It is undisputed that Delaware law controls this libel claim. [HN8] Delaware defines libel as "a false and defamatory statement of fact concerning the plaintiff made in an unprivileged publication to a third party." *Ramunno v. Cawley, 705 A.2d 1029, 1035 (Del. 1998)* (citing *Spence v. Funk, 396 A.2d 967, 969 (Del. 1978))*. [*12] To be defamatory, a statement must "tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or

dealing with him." *Ramunno, 705 A.2d at 1035.*

The Court finds that Plaintiff has not demonstrated sufficient evidence regarding how his designation on the DuPont website as an "Information Scientist" lowered him in the estimation of the community or deterred people from associating with him. Mr. Igwe alleges in a conclusory fashion that the inaccurate designation "humiliated him" and "damaged his reputation and standing ..." (D.I. 28, Ex. 1. at 7.) Further, while Mr. Igwe contends that the misrepresentation caused him to be denied projects, he has not cited any specific projects which he was denied. For these reasons, the Court concludes that Summary Judgment on the issue of defamation and libel is appropriate.

### CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion For Summary Judgment (D.I. 23) in all respects.

An appropriate Order will be entered.

### O R D E R

At Wilmington, this 24 day of January 2005, for the reasons set forth in the Memorandum [*13] Opinion issued this date;

IT IS HEREBY ORDERED that:

1) Defendant E.I. DuPont de Nemours & Company Incorporated's Motion for Summary Judgment (D.I. 23) is **GRANTED.**

January 24, 2005
DATE

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

### JUDGMENT IN A CIVIL CASE

For the reasons stated in the Court's Memorandum Opinion and Order issued on January 24, 2005;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of Defendant E.I. DuPont de Nemours & Company Incorporated and against Plaintiff Godwin J. Igwe.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE.

LEXSEE 2005 U.S. DIST LEXIS 18891

MARLAYNA G. TILLMAN, Plaintiff, v. THE PEPSI BOTTLING GROUP, INC. and
TEAMSTERS LOCAL UNION 830, Defendants.

Civ. No. 04–1314–SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 18891; 10 Wage & Hour Cas. 2d (BNA) 1633*

August 30, 2005, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an employment dis-
crimination action, defendant employer filed a motion
to dismiss plaintiff employee's claims for sexual harass-
ment, retaliation, breach of the covenant of good faith and
fair dealing, failure to promote, and all claims under the
Delaware Wage Payment and Collection Act. Defendant
union filed a motion for a more definite statement.

**OVERVIEW:** The employer argued that the employee's
claims for sexual harassment and retaliation failed be-
cause the employee did not exhaust all her administrative
remedies because those claims were not included in her
charge of discrimination. As to the sexual harassment
claim, the court agreed, noting that it was not reason-
ably within the scope of either the United States Equal
Employment Opportunity Commission (EEOC) charge
or investigation. The retaliation claim survived, however,
because it was within the scope of the EEOC charge al-
leging denial of equal pay, benefits, and promotional op-
portunities. The employer sought dismissal of the failure
to promote claim on the basis that the employee failed to
identify whether her claim was based on racial or gender
discrimination. The court concluded that the employee's
statement that she was an African–American female was
sufficient as it asserted factual allegations in support of
the claim. Finally, the court concluded that the union
was not entitled to a more definite statement because the
complaint sufficiently stated the nature of the action, the
general factual background, the basis for seeking relief,
and the relief sought.

**OUTCOME:** The employer's motion to dismiss was
granted as to the sexual harassment claim, the breach of
implied covenant of good faith and fair dealing claim, and
the Delaware Wage Payment and Collection Act claim,
and was denied as to all other claims. The union's motion
for a more definite statement was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses,
Objections & Demurrers > Failure to State a Cause of
Action
Evidence > Procedural Considerations > Burdens of
Proof*
[HN1] In analyzing a motion to dismiss pursuant to *Fed.
R. Civ. P. 12(b)(6)*, the court must accept as true all mate-
rial allegations of the complaint and it must construe the
complaint in favor of the plaintiff. A complaint should be
dismissed only if, after accepting as true all of the facts
alleged in the complaint, and drawing all reasonable in-
ferences in the plaintiff's favor, no relief could be granted
under any set of facts consistent with the allegations of the
complaint. Claims may be dismissed pursuant to a Rule
12(b)(6) motion only if the plaintiff cannot demonstrate
any set of facts that would entitle her to relief. The moving
party has the burden of persuasion.

*Civil Procedure > Pleading & Practice > Defenses,
Objections & Demurrers > Failure to State a Cause of
Action*
[HN2] When deciding a motion to dismiss, the court also
is allowed to consider any exhibits attached to the com-
plaint as well as documents attached to the motion to
dismiss which form the basis of the plaintiff's claims.

*Labor & Employment Law > Discrimination > Title VII
Labor & Employment Law > U.S. Equal Employment
Opportunity Commission > Exhaustion of Remedies*
[HN3] The jurisdictional prerequisites to a suit under Title
VII are the filing of charges with the United States Equal
Employment Opportunity Commission (EEOC) and the
receipt of a notice of right to sue. The requirement that
a complainant file charges with the EEOC gives that ad-
ministrative agency the opportunity to investigate, medi-
ate and take remedial action with respect to a charge of
discrimination. Although preliminary requirements for a
Title VII action are to be interpreted in a non–technical
fashion, nonetheless, the parameters of the civil action in

Case 1:05-cv-00007-JJF    Document 11    Filed 11/02/2005    Page 55 of 62

Page 2

2005 U.S. Dist. LEXIS 18891, *; 10 Wage & Hour Cas. 2d (BNA) 1633

the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings. The relevant test for determining whether plaintiff must exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. Claims considered within the scope of the prior EEOC complaint either arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN4] When deciding a motion to dismiss for failure to state a claim, one must read *Fed. R. Civ. P. 12(b)(6)* in conjunction with *Fed. R. Civ. P. 8(a)*, which establishes the requirements for adequately pleading a claim in federal court.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN5] *Fed. R. Civ. P. 8(a)* requires a short and plain statement of the claim showing that the pleader is entitled to relief. The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests. A plaintiff is not required to state precisely each element of the claim. Despite that fact, a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.

*Labor & Employment Law > Discrimination > Disparate Treatment*
*Labor & Employment Law > Discrimination > Title VII*
[HN6] The United States Court of Appeals for the Third Circuit has previously recognized claims for failure to promote.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption*
[HN7] The reach of § 301 of the Labor Management Relations Act encompasses not only state–law claims that are directly based on a collective bargaining agreement but also all those that are substantially dependent upon analysis of the terms of the agreement.

*Civil Procedure > Pleading & Practice > Defenses,*

*Objections & Demurrers > Defects of Form*
[HN8] A motion under *Fed. R. Civ. P. 12(e)* is made to correct a pleading that is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading. The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form*
[HN9] A complaint which states the nature of the action, the general factual background, the basis for seeking relief, and the relief sought is all that is required by notice pleading under *Fed. R. Civ. P. 8*. In such circumstances, a motion for a more definite statement should not be granted.

COUNSEL: [*1] Jeffrey K. Martin, Esquire, and Timothy J. Wilson, Esquire, of Margolis Edelstein, Wilmington, Delaware, for Plaintiff.

William M. Kelleher, Esquire, of Ballard Spahr Andrews & Ingersoll, LLP, Wilmington, Delaware, for Defendant Pepsi Bottling Group, Inc. Of Counsel: Daniel V. Johns, Esquire, and Lucretia C. cLemons, Esquire of Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, Pennsylvania.

Clifford B. Hearn, Jr., Esquire, Wilmington, Delaware. Stephen J. Holroyd, Esquire, and Marc. L. Gelman, Esquire, of Jennings Sigmond, Philadelphia, Pennsylvania, for Defendant Teamsters Local Union 830.

JUDGES: ROBINSON Chief Judge.

OPINIONBY: Sue L. Robinson

OPINION:

### MEMORANDUM OPINION

Dated: August 30 , 2005
Wilmington, Delaware

ROBINSON Chief Judge

## I. INTRODUCTION

On September 29, 2004, plaintiff Marlayna G. Tillman commenced this suit against defendants, Pepsi Bottling Group, Incorporated ("PBG") and Teamsters Local 830 ("Local 830"). (D.I.1) In her complaint, plaintiff asserted the following claims: (1) racial discrimina-

Case 1:05-cv-00007-JJF     Document 11     Filed 11/02/2005     Page 56 of 62

Page 3

2005 U.S. Dist. LEXIS 18891, *1; 10 Wage & Hour Cas. 2d (BNA) 1633

tion; (2) violation of *42 U.S.C. § 1981*; (3) gender discrimination; (4) sexual harassment; (5) retaliation; (6) failure [*2] to promote in violation of the *Fair Labor Standards Act* ("FLSA"); (7) violation of *Delaware's Wage Payment and Collection Act*; (8) violation of the *Equal Pay Act*; and (9) a breach of the covenant of good faith and fair dealing. (Id.) The court has jurisdiction pursuant to *28 U.S.C. § 1331*. Presently before the court is PBG's motion to dismiss plaintiff's claims for sexual harassment, retaliation, breach of the covenant of good faith and fair dealing, n1 failure to promote and all claims under the Delaware Wage Payment and Collection Act. For the reasons set forth below, the court grants in part and denies in part defendant PBG's motion. Also before the court is Local 830's motion for a more definite statement which, for the reasons set forth below, the court shall deny.

> n1 The court shall grant the motion to dismiss plaintiff's claim alleging breach of the implied covenant of good faith and fair dealing, as it is unopposed. (D.I. 11 at 2)

## II. BACKGROUND n2

> n2 Given the standard for a motion to dismiss, the court considered only those facts pled in the complaint and not those additional facts alleged in the brief answering defendant PBG's motion to dismiss.

[*3]

PBG hired plaintiff on May 8, 2001, as a merchandiser in the Merchandising/Marketing/Sales department. (Id. at P 11) Plaintiff, employed in an entry level position, was paid an hourly rate of $10.57 per hour. (Id.) In September 2001, plaintiff was moving pallets at work when a wood chip entered her eye. (Id. at P 13) She was taken to the hospital and missed two days of work. (Id.) Plaintiff returned to work and her supervisor, Bruce Wray, informed her that she would not be paid for the missed days. (Id.) Believing that she was entitled to six paid sick days, plaintiff discussed the situation with the Human Resources Department ("HR"). (Id.) Five months later, plaintiff was assigned to the Conventional Department by Wray; because plaintiff was maintaining her responsibilities in the Merchandising/Marketing/Sales Department, she was effectively working two jobs. (Id. at PP 14,20) Plaintiff believes that the transfer was an act of retaliation for her conversation with HR regarding the unpaid sick days. (Id.)

The Conventional Department position is union-eligible. (Id. at P 15) According to Local 830's by-laws and the defendants' collective bargaining [*4] agreement, the defendants had thirty days after transferring plaintiff to either incorporate her into Local 830 or return her to her original position in the company. n3 (Id. at P 19) This procedure was not followed by defendants. (Id.) Further, plaintiff went to HR to ask for assistance in obtaining entry to Local 830, but was not permitted to join. (Id.)

> n3 The complaint does not differentiate between the defendants and, as the court must accept the facts of the complaint as true, the court will use "defendants" to refer to both PBG and Local 830 as the complaint does.

Plaintiff worked both positions for eight months, starting October 13, 2001 and ending May 28, 2002. (Id. at P 20) During this period, plaintiff did not receive overtime pay or the Union's higher weekend pay rate. (Id. at P 18) Plaintiff, an African-American female, was the only employee in the department performing union work who was not paid union wages. (Id. at P 15) Plaintiff continued to be paid at her initial hourly [*5] rate of $10.57 while other male employees were paid $16.63 per hour. (Id. at P 16) Additionally, plaintiff was supposed to be paid for a pre-determined forty hour work week but on several occasions was not compensated for the full forty hours. (Id. at P 25) On average, plaintiff worked approximately fifteen to twenty overtime hours per week without any overtime compensation. (Id. at P 26) In failing to pay plaintiff wages to which she was entitled, defendants are alleged to have violated the collective bargaining agreement between them. (Id. at PP 25, 31) Plaintiff requested back pay for the eight months that she had been working both positions and her request was denied by defendants. (Id. at P 37) Further, by not gaining admittance to Local 830, plaintiff was also denied union benefits and protection. (Id. at P 17)

Despite her repeated requests, plaintiff was not made a member of the Union. (Id.) In April 2002, plaintiff asked HR to transfer her to a union position. (Id. at P 35) On May 28, 2002, plaintiff was returned to her original position in the Merchandising/Marketing/Sales Department and was given a pay raise, making her hourly rate $10.86. [*6] (Id. at P 36) On July 22, 2002, HR transferred plaintiff to a union position in the Warehouse Department. (Id. at P 39) Prior to plaintiff's transfer, PBG hired (in the same capacity as plaintiff) three male employees who had no prior experience and had never worked for PBG. (Id. at P 40) The male employees were installed in union positions before plaintiff's transfer was finalized and, therefore, were able to surpass plaintiff in seniority. n4 (Id. at

Case 1:05-cv-00007-JJF    Document 11    Filed 11/02/2005    Page 57 of 62

Page 4

2005 U.S. Dist. LEXIS 18891, *6; 10 Wage & Hour Cas. 2d (BNA) 1633

P 41) Plaintiff filed a complaint with HR and Local 830 because the hiring violated company policy to hire from within. (Id. at P 42)

> n4 This hiring affected plaintiff's seniority and her ability to bid for positions. (D.I. 1 at P 43)

After being transferred to the Warehouse Department, plaintiff was paid $12.68 per hour. The union rate, which her male colleagues received, was between $15.75 and $16.63 per hour. (Id. at P 44) In her complaint, plaintiff also alleges that, during July 2002, her new male co-workers made comments on her [*7] breast size and other inappropriate topics. (Id. at PP 45-47) A co-worker, Howard Laws, told plaintiff that she needed "to get laid" and that "[he was] just the man to do it to [her]." (Id. at P 46) On another occasion, Laws asked plaintiff if he could borrow a pen. (Id. at P 47) When plaintiff removed the pen from her shirt pocket, Laws commented "you just want me to watch you touch your breasts." (Id. ) Plaintiff filed a grievance with HR alleging sexual harassment, but no action was taken. n5 (Id. at P 48) In August 2002, plaintiff asserts that the Warehouse Department supervisors began to scrutinize her more than her co-workers by singling her out for verbal discipline and threatening to place written reprimands in her file. (Id. at PP 51, 52)

> n5 Plaintiff also complained to HR and management about rumors that were circulating. (D.I. 1 at P 50) The rumors portrayed the plaintiff as sleeping with co-workers. (Id.) The complaint to HR about the rumors also went unanswered. (Id.)

[*8]

On August 28, 2002, plaintiff filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her race and her gender. (Id. at P 53; D.I. 9, ex. 1) Plaintiff's charge states:

> I am a black female individual who has been employed by Respondent since 5/8/01. Respondent has denied me various promotional opportunities, particularly for Driver positions. Instead, I have been assigned to work in various departments, including, currently, the Warehousing Department, where I am subjected to disparate treatment with regard to terms and conditions of my employment. My supervisors, Glen Matthew (white male) and Tom Riley (black male) hold me to a higher standard than my white male

> coworkers with regard to rules and regulations. As recently as 8/27/02, I was falsely accused of leaving my shift without checking with the Supervisor on Duty. Also, I am paid lower wages than my white male counterparts, although I am expected to perform the same work as they are.

> I have been told that I could not get a Driver position because I am not in the Union. I [*9] believe I have been discriminated against in violated [sic] of the Civil Rights Act of 1964, as amended, and the Delaware Discrimination in Employment Act, because: I am the only female working in my classification. and I am paid lower wages than my male counterparts, denied promotional opportunities, and held to a higher standard. I have seen male coworkers who are not in the union, some with less tenure, obtain Driver positions and thereby become union members.

(D.I. 9, ex. 1) Shortly thereafter, plaintiff received a salary increase to $15.75 per hour. (D.I. 1 at P 54)

Plaintiff was fired, along with other members of her Department, on September 18, 2002. (Id. at P 55) All of plaintiff's co-workers were recalled to work two days later, but plaintiff was not recalled until October 21, 2002. n6 (Id. at PP 55-57) Upon her return to work, plaintiff's supervisors started a disciplinary file on her. (Id. at P 58) Every minor infraction was recorded and plaintiff was sometimes written up without her knowledge. (Id.) Prior to this time, plaintiff had never been issued a written reprimand. (Id.) In November 2002, plaintiff was singled cut and verbally reprimanded [*10] for using a personal cell phone. (Id. at P 60) Plaintiff filed a grievance with Local 830, but no action was taken. (Id. at P 61)

> n6 Upon her return to work, plaintiff filed another grievance with the Local 830 regarding her layoff. (D.I. 1 at 58) This time. Local 830 demanded the company pay plaintiff for the four weeks she was laid off. (Id.) Plaintiff was paid these wages in December 2002. (Id.)

In April 2003, plaintiff heard a male supervisor, Joe Rizzo, make racial and derogatory comments about African–Americans, Hispanics and women. (Id. at P 63) Plaintiff complained to HR and was assured that an investigation would take place. (Id.)  To the best of plaintiff's knowledge, no action was taken against Rizzo. (Id.)  After filing the complaint with HR, plain-

Case 1:05-cv-00007-JJF    Document 11    Filed 11/02/2005    Page 58 of 62

Page 5

2005 U.S. Dist. LEXIS 18891, *10; 10 Wage & Hour Cas. 2d (BNA) 1633

tiff observed an immediate change in Rizzo's behavior towards her. (Id.) Plaintiff was then transferred to the Production Department of which Rizzo was supervisor. (Id.) Plaintiff requested a transfer from the Production [*11] Department on three occasions; all were denied. (Id.) On April 22, 2003, plaintiff filed an additional charge of discrimination with the DDOL against Local 830 alleging racial and sex discrimination and also retaliation. (Id. at P 64)

On November 6, 2003, plaintiff injured her leg while climbing out of a truck and was placed on short term disability. (Id. at P 65) Plaintiff did not receive her disability check for ten weeks because HR forgot to file the paperwork. (Id.) Plaintiff ultimately was paid in one lump sum and, therefore, was taxed heavily on the full amount. (Id.) Plaintiff returned to work on April 19, 2004, and was assigned to the can line filler room. (Id. at P 66) This position required plaintiff to stand for prolonged periods of time. (Id.) Plaintiff went to Rizzo and asked for accommodations or to "bump" another employee for a sitting position because she was unable to stand for long periods of time. (Id.) Rizzo informed plaintiff that her only option would be to take a short term disability leave again. (Id.) Plaintiff was not paid for the second short term disability period. (Id.)

The DDOL investigated plaintiff's Charge of [*12] Discrimination and found in favor of plaintiff. (Id. at P 67) With respect to the Charge of Discrimination filed against PBG in August 2002, the DDOL characterized the disputed facts as follows:

> 1. Charging party states that she was discriminated against by Respondent because she was not afforded the same opportunities as her male counterparts in regards to promotions such as driver positions and she is subjected to disparate treatment from management in regards to the terms and conditions of her employment.
>
> 2. Respondent states that Ms. Tillman was treated the same as her male co-workers and afforded all the same opportunities for promotions and not treated disparately by her supervisors.

(D.I. 1, ex. A) After its investigation, the DDOL resolved these issues of facts as follows:

> 1. Charging Party was able to establish that she had been treated disparately compared to her male co-workers. This was demonstrated through the documentation provided

by Respondent in regards to Charging Party's attendance records and the various documentation regarding the amount of time she was late, left work early and called off of work. The same attendance records for [*13] her co-workers do not reflect the same amount of scrutiny on a regular basis as Charging Party in regards to being less than 5 minutes late to work. . . .

> 2. A review of the punch detail reports along with the timecard records reveals that male employees more frequently are receiving the standard number of hours in a week and are also more frequently receiving overtime hours than Charging Party. . . .

> * * * *

> 4. Charging Party provided documentation, which reflects a decreased amount of hourly wage than that of her male co-workers. . . .

> 5. Witnesses were contacted and asked about their schedules, the number of hours they are afforded each week, the disciplinary [sic] received or not received regarding their work schedules and the use of personal cell phones on the job. The results of these interviews clearly revealed that Charging Party's male counterparts are treated more favorably than Charging Party.

(Id.) The DDOL concluded that plaintiff had "met her burden of showing that she was discriminated against based on her gender." (Id.) Plaintiff was issued two right to sue letters from the EEOC on July 1, 2004. (Id. at P68)

Plaintiff took three [*14] weeks vacation from August 8, 2004 through August 30, 2004. (Id. at P 69) Upon returning to work, plaintiff was called into HR to discuss her complaints about the sexual harassment. n7 (Id.) On August 12, 2004, the NAACP held a press conference in which plaintiff participated. (Id. at P 70) After the press conference, plaintiff was informed that she had been awarded a transfer to the Transport Department, a position she had bid on three or four times over the last few years. (Id.) Plaintiff was awarded this position on September 17, 2004. (Id.) After transferring to the Transport Department, plaintiff was warned to "watch her back" because the company wants "to get rid of [her]." (Id. at P 71)

n7 Plaintiff also gave HR a pornographic magazine which she had found on a clipboard inside a

Case 1:05-cv-00007-JJF    Document 11    Filed 11/02/2005    Page 59 of 62

Page 6

2005 U.S. Dist. LEXIS 18891, *14; 10 Wage & Hour Cas. 2d (BNA) 1633

truck. (D.I. 1 at PP 49, 69)

## III. STANDARD OF REVIEW

[HN1] In analyzing a motion to dismiss pursuant to *Rule 12 (b) (6)*, the court must accept as true all material allegations of the complaint and **[*15]** it must construe the complaint in favor of the plaintiff. See *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)*. "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule l2 (b) (6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle her to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The moving party has the burden of persuasion. See *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)*.

[HN2] When deciding a motion to dismiss, the court also is allowed to consider any exhibits attached to the complaint as well as documents attached to the motion to dismiss which form the basis of the plaintiff's claims. See *Rossman v. Fleet Bank Nat'l Ass'n, 280 F.3d 384, 388 n.4 (3d Cir. 2002)*; *Pryor v. NCAA, 288 F.3d 548, 559-60 (3d Cir. 2002)*; **[*16]** *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)* ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.").

## IV. DISCUSSION

PBG makes three separate arguments for dismissal of plaintiff's claims against it. First, PBG claims that plaintiff's sexual harassment and retaliation claims fail because she did not exhaust all available administrative remedies. (D.I. 9 at 1) Second, PBG argues that there is no legal basis for plaintiff's failure to promote claim, (Id.) Finally, PBG asserts that plaintiff's claim pursuant to the Delaware Wage Payment and Collection Act is preempted by *§ 301* of the Labor Management Relations Act. (Id.)

### A. Sexual Harassment and Retaliation Claims

PBG seeks dismissal of plaintiff's claims for sexual harassment and retaliation because she did not exhaust all her administrative remedies. (D.I. 9 at 4) Specifically, PBG contends that plaintiff's claims fail because her allegations of sexual harassment and retaliation were not included in her Charge of Discrimination. **[*17]** (Id.)

[HN3] The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of a Notice of Right to Sue. *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. The requirement that a complainant file charges with the EEOC gives that administrative agency the opportunity to investigate, mediate and take remedial action with respect to a charge of discrimination. See *Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)*. Although preliminary requirements for a Title VII action are to be interpreted in a non-technical fashion, see *Love v. Pullman Co., 404 U.S. 522, 527, 30 L. Ed. 2d 679, 92 S. Ct. 616 (1972)*, nonetheless, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings." *Ostapowicz, 541 F.2d at 398-99*. The relevant test for determining whether plaintiff must exhaust her administrative remedies, therefore, is "whether the acts alleged in the subsequent Title VII suit are fairly **[*18]** within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)* (quoting *Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984))*. Claims considered within the scope of the prior EEOC complaint either arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge. See *Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984)*; *Ostapowicz, 541 F.2d at 398-99*; *Flesch v. E. Pa. Psychiatric Inst., 434 F. Supp. 963, 970 (E.D. Pa. 1977)*; *Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)*.

As evidenced by plaintiff's Charge of Discrimination filed with the DDOL and the EEOC, and the Notice of Reasonable Cause Finding issued by the DDOL, plaintiff's sexual harassment claim is not reasonably within the scope of either the claim or the investigation. The sexual harassment claim arises from a set of facts wholly distinct from plaintiff's contention of disparate treatment with respect to the terms and conditions of her employment, **[*19]** i.e., wages, promotional opportunities, and disciplinary record. See, e.g., *Sandom v. Travelers Mortgage Servs., Inc., 752 F. Supp. 1240, 1248 (D.N.J. 1990)*. Because neither plaintiff nor the DDOL ever mentioned any of the incidents about inappropriate comments as described in plaintiff's complaint at bar, "the sexual harassment claim would, most likely, not have arisen out of a reasonable EEOC investigation of the filed claim absent a specific allegation in the charge." Id. The sexual harassment claim cannot be said to closely relate to the conduct alleged in the charge nor is it an explanation of

the conduct in the charge. Additionally, the conduct did not occur during the pendency of the EEOC investigation, as the alleged sexual harassment occurred in July 2002, at least one month prior to plaintiff filing her Charge of Discrimination. (D.I. 1 at PP 45, 53) Therefore, plaintiff failed to exhaust her administrative remedies as to this claim and the motion to dismiss shall be granted in this regard.

Retaliation claims have been considered within the scope of a prior charge. See *Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir. 1985) (finding [*20] a retaliation claim within the scope of a prior claim filed with the EEOC alleging sexual discrimination); *Howze, 750 F.2d at 1212 (3d Cir. 1984)* (allowing a retaliation claim for failure to promote allegation within race discrimination). In this case, plaintiff's Charge of Discrimination sets forth three allegations: 1) plaintiff is paid lower wages than her male counterparts; 2) plaintiff is denied promotional opportunities; and 3) there is disparate treatment between plaintiff and her white male counterparts. (D.I. 9, ex. 1) Plaintiff filed a charge of discrimination on August 28, 2002. (D.I. 1 at P 53) Plaintiff was fired on September 18, 2002, and returned to work on October 21, 2002. (Id. at PP 55, 57) After plaintiff returned to work, her supervisors began creating a disciplinary file on her based on conduct for which other employees received no discipline. (D.I. 1 at PP 59–60) Additionally, plaintiff alleges that she was denied equal pay, benefits, and promotional opportunities in retaliation for filing her Charge of Discrimination. (D.I. 1 at PP 62, 65–66, 88(b)) Accepting the allegations contained in the administrative record as true, the motion to dismiss [*21] the retaliation claim shall be denied.

### B. Failure to Promote

PBG argues that plaintiff's failure to promote claim is not sufficiently pled because plaintiff failed to identify whether her claim was based on racial or gender discrimination or both. (D.I. 9 at 5; D.I. 13 at 3) [HN4] "When deciding a motion to dismiss for failure to state a claim, 'one must read *Fed. R. Civ. P. 12(b) (6)* in conjunction with *Fed. R. Civ. P. 8(a)*, which establishes the requirements for adequately pleading a claim in federal court.'" *Relational Funding Corp. v. TCIM Servs., 2002 U.S. Dist. LEXIS 7298, No. Civ. A. 01–821–SLR, 2002 WL 655479, at *3 (D. Del. Apr. 18, 2002)* (quoting *Brunetti v. Rubin, 999 F. Supp. 1408, 1409 (D. Col. 1998)*). [HN5] *Rule 8 (a)* requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. A plaintiff is not required to state precisely [*22] each ele-

ment of the claim. *Relational Funding Corp., 2002 U.S. Dist. LEXIS 7298, 2002 WL 655479, at *3* (discussing 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1216 (2d ed. 1990)). "Despite that fact, a plaintiff must 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" id. (quoting *Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)*). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. See *Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)*.

In her complaint, plaintiff states that she is an African-American female. (D.I. 1 at P 2) As an African-American female, plaintiff is clearly a member of a protected class. *Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002)*. Given the liberal pleading requirements of *Rule 8*, the court concludes that plaintiff's statement that she is an African-American female is sufficient as it asserts factual allegations that support her claim.

Additionally, PBG's [*23] inference that there is no statutory or common law basis for a failure to promote claim is without merit, as [HN6] the Third Circuit has previously recognized such claims. See, e.g., *Young v. Pennsauken Township Sch. Dist., 47 Fed. Appx. 160, 161 (3d Cir. 2002)* ("Such failure–to–promote claims are analyzed under the well known burden–shifting framework as set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*."). The court concludes that plaintiff's failure to promote claim meets the requirements of *Rule 8* and the motion to dismiss shall be denied.

### C. Delaware Wage Payment and Collection Act

Plaintiff asserts that her claim under the Delaware Wage Payment and Collection Act is not dependant upon, or inextricably intertwined with, the collective bargaining agreement because her claim for lost wages is only for the time period when plaintiff was not a member of the Union. (D.I. 11 at 17) In the same paragraph, plaintiff claims that the collective bargaining agreement has "nothing to do" with her claim other than the fact that she "rightly should have been paid at the same rate of pay as those other individuals, [*24] similarly situated, who were being paid in accordance with that agreement." (Id.)

[HN7] The reach of *Section 301* of the Labor Management Relations Act ("LMRA") "encompasses not only state–law claims that are directly based on a collective bargaining agreement but also all those that are 'substantially dependent upon analysis of the terms' of the agreement." *Wheller v. Graco Trucking Corp., 985 F.2d 108, 113 (3d Cir. 1993)* (quoting *Allis–Chalmers Corp.*

Page 8

2005 U.S. Dist. LEXIS 18891, *24; 10 Wage & Hour Cas. 2d (BNA) 1633

*v. Lueck, 471 U.S. 202, 220, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985)*); see also *id. at 112* (holding that state law claims for wages allegedly due under a collective bargaining agreement are preempted by *§ 301 of the LMRA*) ; Phillips v. United Parcel Serv., Inc., No. 01-22-*GMS, 2001 WL 694535,* at *2-3 (D. Del. Jun. 20, 2001) (holding that claims brought pursuant to the Delaware Wage Payment and Collection Act for wages under a collective bargaining agreement are preempted by the LMRA).

Plaintiff claims that she is entitled to liquidated damages in an amount equal to unpaid overtime and wage differences pursuant to Delaware's Wage Payment and Collection Act. (D.I. 1 at P 104) Specifically, plaintiff asserts that PBG [*25] "refused to pay [her] for overtime for weeks in which she worked in excess of forty hours, as well as time and a half for Saturday hours worked and double-time for Sunday hours worked per the terms of the collective bargaining agreement." (D.I. 1 at P 31) Additionally, plaintiff asserts the collective bargaining agreement was violated when she was not admitted to Local 830 in November 2001. (Id. at P 19) To determine whether the collective bargaining agreement was violated, whether plaintiff is entitled to the higher Union wages, and whether plaintiff is entitled to overtime, the court will have to interpret the collective bargaining agreement. The court finds that this interpretation of the collective bargaining agreement will be substantially dependent upon analysis of the terms of the agreement and, therefore, plaintiff's state wage claims are preempted by the LMRA. The motion to dismiss this claim shall be granted.

**D. Motion for a More Definite Statement**

Local 830 moves the court to require plaintiff to provide a more definite statement pursuant to *Fed. R. Civ. P. 12(e).* (D.I. 10) In this case, Local 830 contends that a more [*26] definite statement is needed because the complaint fails to "specifically delineate" the conduct performed by each defendant and that the conduct of Local 830 is only alluded to, not "specifically" pled. (D.I. 10 at 2)

[HN8] A motion under *Rule 12(e)* is made to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Fed. R. Civ. P. 12(e).* The purpose, however, of *Rule 12(e)* is not to make it easier for the moving party to prepare its case. n8 *Symbol Techs., Inc. v. Hand Held Prods., 2003 U.S. Dist. LEXIS 21002, No. Civ. A. 03-102-SLR, 2003 WL 22750145,* at *3 (D. Del. Nov. 14, 2003).

n8 The advisory committee notes to *Rule 12(e)* state: "with respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules

for that purpose." See, e.g., *Campbell v. Miller, 836 F. Supp. 827, 832 (M.D. Fla. 1993)* ("A motion for a more definite statement is not a substitute for discovery.")

[*27]

Consistent with *Fed. R. Civ. P. Rule 8,* the [HN9] complaint states the nature of the action, the general factual background, the basis for seeking relief, and the relief sought. "This is all that is required by notice pleading under the [Federal Rules of Civil Procedure]. In these circumstances, a motion for a more definite statement should not be granted." *Marshall v. Local 326, No. 80-181, 1980 U.S. Dist. LEXIS 16547, at *1 (D. Del. May 5, 1980).* Paragraph I of the complaint alleges that the action arises under Title VII. (D.I. 1 at 1) Among other things, the complaint alleges that the Union failed to respond to plaintiff's complaints, violated its collective bargaining agreement, and engaged in discrimination on the basis of race and **sex.** (D.I. 1 at 19, 31, 42, 61) In addition, the complaint demands various forms of compensation to be determined at trial. (D.I. 1) The complaint, therefore, complies with *Rule 8*'s liberal pleading requirements and provides sufficient notice to Local 830 to prepare a responsive pleading. Local 830's motion for a more definite statement shall be denied.

**V. CONCLUSION**

For the reasons [*28] stated above, defendant PBG's motion to dismiss is granted as to the sexual harassment claim, the breach of implied covenant and good faith and fair dealing and the Delaware Wage Payment and Collection Act, and as to all other claims denied. Defendant Local 830's motion for a more definite statement is denied. An order consistent with this memorandum opinion shall issue.

**ORDER**

At Wilmington this 30th day of August, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED:

1. Defendant Pepsi Bottling Group's motion to dismiss is granted as to the sexual harassment, Delaware Wage Payment and Collection Act and the breach of implied covenant and good faith and fair dealing claims and denied as to all other claims. (D.I. 8)

2. Defendant Teamsters Union Local 830's motion for a more definite statement is denied. (D.I. 10)

Sue L. Robinson

United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VALERIE REEVES,         :
                          :

      Plaintiff,         :
                          :

      v.             :       C.A. No. 05-7 JJF
                          :

RADIOLOGY ASSOCIATES, INC.,  :      JURY TRIAL DEMANDED
                          :

      Defendant.      :

## CERTIFICATE OF SERVICE

I certify that on this 1st day of November 2005 that I caused a copy of the attached to be filed with the Clerk of the Court using CM/ECF and that a copy has been mailed to the pro se plaintiff at the following address:

Valerie Reeves
8 Delft Ct.
Middletown, DE 19709

                      **RICHARD R. WIER, JR., P.A.**


                      _____/s/ Daniel W. Scialpi_____
                      Richard R. Wier, Jr. (#716)
                      Daniel W. Scialpi (#4146)
                      1220 Market St., Suite 600
                      Wilmington, DE 19801
                      (302)888-3222
                      RWier@wierlaw.com